# United States Court of Appeals for the Federal Circuit

2008-5011


ARKO EXECUTIVE SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Michael J. Shea, Sutherland Asbill & Brennan LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Lewis S. Wiener.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

2008-5011

ARKO EXECUTIVE SERVICES, INC.,

Plaintiff-Appellant,

v

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in consolidated cases 05-CV-1193 and 06-CV-0296, Judge Francis M Allegra.

———————————————

DECIDED:   January 21, 2009

———————————————

Before RADER and DYK, <u>Circuit Judges</u>, and Walker, [*] <u>Chief District Judge</u>.

WALKER, <u>Chief District Judge</u>.

Plaintiff-appellant Arko Executive Services, Inc ("Arko") appeals from a final order of the Court of Federal Claims granting summary judgment in favor of defendant-appellee United States ("the government") in this services contract dispute brought pursuant to the Contract Disputes Act of 1978, 41 USC §§ 601-613.  <u>See</u> <u>Arko Executive Servs, Inc v United States</u>, 78 Fed Cl 420 (2007).  Because the trial court correctly interpreted the contract at issue, we <u>affirm</u>.

—————————————

[*]    Honorable Vaughn R Walker, Chief Judge, United States District Court for the Northern District of California, sitting by designation.

BACKGROUND

Arko, an American security company, contracted with the government to provide guard services to the American Embassy in Nicosia, Cypress. Services were provided pursuant to Contract No S-CY-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 ("the contract"), which provided for a base year of service beginning April 1, 2000 and four optional one-year renewals.

The government exercised the four one-year options to renew, and the last of these options was set to expire on March 31, 2005. In November 2004, the government solicited offers for the successor contract, with an anticipated start date of April 1, 2005. Two timely offers were submitted, neither by Arko.

On February 8 and again on February 15, 2005, Arko inquired whether the government would require phase-in, phase-out services after March 31, 2005. On February 16, the government responded that it did "not anticipate the need for any phase-in/phase-out services." Then, on March 4, 2005, the government notified Arko that it would require services through April 30, 2005, citing FAR 52.217-8, the "Option to Extend Services" for its unilateral extension of the performance period.

Arko immediately disputed the government's authority to extend Arko's provision of services under FAR 52.217-8, stating that Arko would perform the services under protest. Arko's position apparently was that the only contractual provision allowing continued services after the exercise of the four one-year options to renew was FAR 52.237-3, the "Continuity of Services" clause, which, unlike FAR 52.217-8, provided for cost-plus reimbursement of expenses incurred by Arko during the extension. By letter dated March 18, 2005, the government notified Arko that its final decision was to invoke

FAR 52.217-8 and that it now would require service through May 31, 2005. According to the letter, the government required the additional month of services to ensure time for a replacement contractor to be fully operational and to avoid the need for later extensions. The government issued amended contract modification 21 on March 22, 2005, formalizing its invocation of an extension of services pursuant to FAR 52.217-8. Modification 21 specified that Arko would be paid for services performed from April 1 to May 31, 2005 at the same rate it had been paid for services during the immediately preceding renewal period.

Arko continued performing guard services at the embassy in Nicosia until May 31, 2005. A successor contractor was selected on April 26, 2005 and began performance June 1, 2005.

On November 5, 2005, Arko filed a suit, case no 05-1193C, in the United States Court of Federal Claims ("the trial court") challenging the government's final decision to exercise the government's option to extend services pursuant to FAR 52.217-8 rather than FAR 52.237-3. Arko then submitted a claim to the government seeking compensation of $184,010.10 pursuant to FAR 52.237-3; the government denied that claim on March 21, 2006. On April 14, 2006, Arko filed a new suit in the trial court, case no 06-0296C, challenging the denial of compensation. The trial court consolidated the two cases on May 12, 2006.

Arko filed a motion for summary judgment on the issue whether it was entitled to payment pursuant to FAR 52.237-3. The government moved for summary judgment on liability, arguing that FAR 52.237-3 did not apply to the services performed by Arko from April 1 to May 31, 2005 and that government had the authority to require those services

under FAR 52.217-8. The trial court granted summary judgment in favor of the government, finding no genuine issue of material fact whether the government validly exercised the FAR 52.217-8 clause and finding no basis for Arko's contention that the services provided from April 1 to May 31, 2005 were the phase-in, phase-out services contemplated by FAR 52.237-3. See Arko, 78 Fed Cl at 423-25.

The trial court entered final judgment on September 26, 2007, and Arko timely appealed to this court, which has jurisdiction pursuant to 28 USC § 1295(a)(3). We heard oral argument on September 4, 2008.

## DISCUSSION

We review the trial court's decisions on summary judgment de novo. St Christopher Assocs, LP v United States, 511 F3d 1376, 1380 (Fed Cir 2008). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v Liberty Lobby, Inc, 477 US 242, 247 (1986). Here, there are no disputes of material fact, and the case turns on issues of contract interpretation.

This case centers on several labyrinthine provisions of the contract between Arko and the government. Section F.4 of the contract defines the period of performance:

> F.4. Period of Performance.
> F.4.1. The performance period of this contract is from the date of Notice to Proceed and continuing for 12 months, with four, one-year options to renew. The initial period of performance includes any transition period authorized under the contract.
> F.4.2. The Government may extend this contract in accordance with the option clause at Subsection I.1.2, FAR Clauses Incorporated by Full Text (FAR 52.217-9, Option to Extend the Term of the Contract (Deviation), which also specifies the total duration of this contract.

F.4.3 The Government may exercise the option set forth at Subsection I.1.1, "FAR 52.217-8, Option to Extend Services", within the currently ongoing period of performance or within 30 days after funds for the option become available, whichever is later.

FAR 52.217-9, a clause of the Federal Acquisition Regulations ("FAR") incorporated into the contract in full text, provides:

52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 1989) (DEVIATION)
(a) The Government may extend the term of this contract by written notice to the Contractor within the performance period of the contract or within 30 days after funds for the option year become available, whichever is later.
(b) If the Government exercises this option, the extended contract shall be considered to include this option provision.
(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed five years.

FAR 52.217-8, a clause of the FAR incorporated by reference into the contract, provides:

Option to Extend Services (NOV 1999)
The Government may require continued performance of any services *within the limits and at the rates specified in the contract*. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within ___ [insert the period of time within which the Contracting Officer may exercise the option].

48 CFR § 52.217-8 (emphasis added). Section F.4.3 of the contract, quoted above, allows the government to exercise the FAR 52.217-8 option "within the currently ongoing period of performance," as the government did in this case.

Finally, FAR 52.237-3, incorporated into the contract in full text, provides:

52.237-3 CONTINUITY OF SERVICES (JAN 1991)

(A) The Contractor recognizes that the services under this contract are vital to the government and must be continued without interruption and that, upon contract expiration, a successor, either the government or another contractor, may continue them. The Contractor agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.

(B) The Contractor shall, upon the contracting officer's written notice, (1) furnish phase-in, phase-out services for up to 90 days after this contract expires and (2) negotiate in good faith a successor to determine the nature and extent of phase-in, phase-out services required. The plan shall specify a training program and a date for transferring responsibilities for each division of work described in the plan, and shall be subject to the Contracting Officer's approval. The Contractor shall provide sufficient experienced personnel during the phase-in, phase-out period to ensure that the services called for by this contract are maintained at the required level of proficiency.

(C) The Contractor shall allow as many personnel as practicable to remain on the job to help the successor maintain the continuity and consistency of the services required by this contract. The Contractor also shall disclose necessary personnel records and allow the successor to conduct on-site interviews with these employees. If selected employees are agreeable to the change, the Contractor shall release them at a mutually agreeable date and negotiate transfer of their earned fringe benefits to the successor.

(D) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract.

"'In contract interpretation, the plain and unambiguous meaning of a written agreement controls.' The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract." Hercules Inc v United States, 292 F3d 1378, 1380-81 (Fed Cir 2002) (quoting Craft Mach Works, Inc v United States, 926 F2d 1110, 1113 (Fed Cir 1991)). Further, to exercise an option validly, as the

government argues it did here, "the [g]overnment must exercise the option in exact accord with the terms of the contract." Freightliner Corp v Caldera, 225 F3d 1361, 1366 (Fed Cir 2000).

When the government invoked FAR 52.217-8 to secure security services for April and May, 2005, there is no dispute that it notified Arko in writing within the time allowed. Arko argues instead that the government did not have the authority to require services pursuant to FAR 52.217-8 because the services required were not "within the limits and at the rates specified in the contract."

Arko argues first that the government's attempt to require services pursuant to FAR 52.217-8 after the fifth year of the contract exceeded the time limits of the contract. This argument is based on Arko's contention that FAR 52.217-9(c), which states that "the total duration of this contract, including the exercise of any options under this clause, shall not exceed five years," is an absolute bar to provision of services more than five years after the beginning of performance. This interpretation, however, ignores the phrase "including the exercise of any options under this clause." The presence of this phrase suggests that the five-year limit includes the options discussed in the FAR 52.217-9 clause — which are the four one-year renewals discussed in F.4.1 and F.4.2 — but does not include options to extend services, such as FAR 52.217-8, that are not under the clause.

More importantly, construing the up to six months of extended services authorized by FAR 52.217-8 as allowable in addition to the five years of performance under FAR 52.217-9(c) is consistent with the purpose of FAR 52.217-8. According to another provision of the FAR:

> Award of contracts for recurring and continuing service requirements are often delayed due to circumstances beyond the control of contracting offices. Examples of circumstances causing such delays are bid protests and alleged mistakes in bid. In order to avoid negotiation of short extensions to existing contracts, the contracting officer may include an option clause (see 17.208(f)) in solicitations and contracts which will enable the Government to require continued performance of any services within the limits and at the rates specified in the contract.

48 CFR § 37.111. Section 17.208(f) of the same title in turn allows government contracting officers to insert clauses "substantially the same as the clause at 52.217-8, Options to Extend Services." Id. FAR 52.217-8 allows the government to extend services without negotiating short extensions to existing contracts in circumstances, such as those here, where the award of a successor contract is delayed. In this case, the government exercised all of its renewal options and, several months before the end of the last renewal period, the government requested offers for a successor contract; Arko did not submit an offer. This appears to be exactly the situation FAR 52.217-8 was written to address; it would be an odd result if FAR 52.217-8 did not allow the government to require Arko to continue its services here.

Arko also argues that allowing the government to exercise the FAR 52.217-8 option conflicts with the requirements of FAR 17.204(a) and (e). These regulations require, in relevant part, that contracts "specify limits on the * * * the overall duration of the term of the contract, including any extension," 48 CFR § 17.204(a), and that "the total of the basic and option periods shall not exceed 5 years in the case of services." 48 CFR § 17.204(e). The government correctly notes that Arko cannot assert a cause of action for these unincorporated regulations because they do not exist for the benefit of private contractors. See Freightliner, 225 F3d at 1365. Nonetheless, if the

government's interpretation of FAR 52.217-8 conflicted with FAR 17.204(a) and (e), that would counsel against interpreting the provision as Arko contends.

Interpreting FAR 52.217-8 as not limited by the five-year period recited in FAR 52.217-9(c) does not conflict with FAR 17.204(a) and (e). The contract still specifies limits on the "duration of the contract, including any extension," as required by FAR 17.204(e); the maximum duration including extensions is the five years comprising the initial performance period and four renewal options, plus up to six months of extended services under FAR 52.217-8 and up to 90 days of phase-in, phase-out services under FAR 52.237-3. FAR 17.204(e) simply limits the duration of the initial period of performance and renewal options, just as FAR 52.217-9(c) does in the contract.

Arko's assertion that a five-year limit applies to the FAR 52.217-8 extension of services is belied by its recognition that the government may require phase-in, phase-out services pursuant to FAR 52.237-3 more than five years after performance begins. Arko's counsel attempts to differentiate FAR 52.237-3 from FAR 52.217-8 by arguing that FAR 52.237-3 specifically provides for services "after this contract expires," while FAR 52.217-8 does not characterize the services it authorizes as being performed after the contract expiration. But this language is unremarkable given that FAR 52.237-3 provides for different services from those provided under the contract and compensation at a different rate, while FAR 217-8 provides for continuation of the same services provided under the contract at the contract rate. We hold that the limitation of the contract duration to five years by FAR 52.217-(c) does not preclude extensions beyond five years pursuant to FAR 52.217-8.

Arko's second argument regarding the invalidity of the government's exercise of FAR 52.217-8 is that the rates Arko was paid for work during the two-month extension were not "rates specified in the contract." For the work it performed from April 1 to May 31, 2005, Arko was paid at the contract rate applicable to the immediately preceding renewal period. Strictly speaking, these were rates specified in the contract, but Arko argues that those rates were only applicable for the April 1, 2004 – March 31, 2005 renewal period. This interpretation, like Arko's assertion regarding the absolute five-year time limit, defeats the purpose of FAR 52.217-8, which is to allow the continuation of the status quo when the award of a successor contract is delayed. Arko's interpretation implies that for FAR 52.217-8 to be operable, the contract must specify rates for a potential FAR 52.217-8 extension. But if the contract contained a specific FAR 52.217-8 rate, then the language in FAR 52.217-8 stating that performance must be at the rate specified in the contract would be superfluous. Accordingly, we hold that the government's exercise of the FAR 52.217-8 option to extend services was not made invalid by its use of the rate from the preceding renewal period. The government exercised the FAR 52.217-8 option in exact accord with the terms of the contract and was thus entitled to summary judgment.

We also note the error in Arko's contention that the work it performed from April 1 to May 31, 2005, was phase-in, phase-out work compensable under FAR 52.237-3, the "CONTINUITY OF SERVICES" clause. In ITT Federal Services Corp v Widnall, 132 F3d 1448 (Fed Cir 1997), we wrote:

> The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government. The original contractor is required, upon notice, to provide appropriate transition services, and to be

> reimbursed therefor. The term "phase-in, phase-out operations" means activities that assist a new contractor or the government in connection with the transition.

Id at 1452. FAR 52.237-3 contemplates phase-in, phase-out services of a kind different from the usual services performed under the contract. In this case, Arko performed the same type of services between April 1 and May 31, 2005 as it did during the previous period. It did not perform special phase-in, phase-out services such as training the successor contractor. Even if the government's requirement of services under FAR 52.217-8 were improper, Arko would not be entitled to compensation for those services under FAR 52.237-3.

## CONCLUSION

For the foregoing reasons, we AFFIRM.

## AFFIRMED

No costs.