# United States Court of Appeals for the Federal Circuit

2008-5042

ELLAMAE PHILLIPS CO.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

George M. Allen, of Telluride, Colorado, argued for plaintiff-appellee.

Katherine J. Barton, Attorney, Environment & Natural Resources Division, Appellate Section, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Ronald J. Tenpas, Assistant Attorney General, and Kathryn E. Kovacs, Attorney. Of counsel on the brief was William Shapiro, Attorney, of Sacramento, California.

Richard A. Allen, Zuckert, Scoutt & Rasenberger, L.L.P., of Washington, DC, for amicus curiae Rails-to-Trails Conservancy. Of counsel on the brief was Andrea Ferster, General Counsel, Rails-to-Trails Conservancy, of Washington, DC.

Cecilia Fex, Ackerson Kauffman Fex, PC, of Washington, DC, for amici curiae Gerlene Hash, et al.

Appealed from: United States Court of Federal Claims

Judge Lawrence M. Baskir

# United States Court of Appeals for the Federal Circuit

2008-5042

ELLAMAE PHILLIPS CO.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of Federal Claims in 04-CV-1544, Judge Lawrence M. Baskir.

———————————————

DECIDED: May 5, 2009

———————————————

Before MAYER, LOURIE, and SCHALL, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

The government appeals from the judgment of the United States Court of Federal Claims granting summary judgment, holding that the conversion of land to a public trail was a taking. <u>See</u> <u>Ellamae Phillips Co. v. United States</u>, 77 Fed. Cl. 387 (2007) ("<u>Summary Judgment Opinion</u>"). The court certified its opinion for interlocutory appeal, and we granted the government's petition for permission to appeal. <u>See</u> <u>Ellamae Phillips Co. v. United States</u>, No. 04-1544L (Fed. Cl. Dec. 21, 2007) ("<u>Certifying Order</u>"); <u>Ellamae Phillips Co. v. United States</u>, 267 F. App'x 943 (Fed. Cir. 2008) ("<u>Order Granting Petition</u>"). Because our prior decision in <u>Hash v. United States</u>, 403 F.3d 1308 (Fed. Cir. 2005) ("<u>Hash II</u>"), upon which the Court of Federal Claims relied in its judgment that a taking had occurred in this case, did not determine the scope of the

easement granted or whether any residual easement has been abandoned in this case, we vacate and remand.

BACKGROUND

Ellamae Phillips Co. ("Phillips") owns a tract of land in Aspen, Colorado, traversed by a railroad corridor. The whole tract was originally public land. In 1886, the corridor was granted to a railroad company, pursuant to 43 U.S.C. §§ 934-939 ("the 1875 Act"). The 1875 Act states, in pertinent part, as follows:

§ 934. Right of way through public lands granted to railroads

The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

. . . .

§ 937. Filing profile of road; forfeiture of rights

Any railroad company desiring to secure the benefits of sections 934 to 939 of this title shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the officer, as the Secretary of the Interior may designate, of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road.

Id. §§ 934, 937 (emphasis omitted).  Thus, the 1875 Act provided for a 200-foot wide passage through public land that would be superior to any private fee estates later created in the same land.

In 1920, Congress enacted an additional statute, codified at 43 U.S.C. § 913, declaring that federally granted rights-of-way could be used for non-railroad transportation purposes:

> § 913.  Conveyance by land grant railroads of portions of rights of way to State, county, or municipality
>
> All railroad companies to which grants for rights of way through the public lands have been made by Congress, or their successors in interest or assigns, are authorized to convey to any State, county, or municipality any portion of such right of way to be used as a public highway or street: Provided, That no such conveyance shall have the effect to diminish the right of way of such railroad company to a less width than 50 feet on each side of the center of the main track of the railroad as now established and maintained.

Id. (emphasis omitted).

The tract that is now owned by Phillips, already traversed by the railroad corridor, was conveyed by patent deed to a private party in 1923 pursuant to the Act of June 11, 1906 (Pub. L. No. 59-220, 34 Stat. 233), which allowed the Secretary of the Interior to examine and declare certain lands fit for agricultural use and for settlement.  The Phillips family acquired the land later in the 1920s.  Summary Judgment Opinion, 77 Fed. Cl. at 389.  Rail operations ceased in the corridor in the 1980s.  Id. at 390.  In 1998, the Roaring Fork Railroad Holding Authority ("RFRHA") operated the right-of-way and converted the corridor to a bike path pursuant to the Rails-to-Trails Act, codified at 16 U.S.C. §§ 1241-1251.

The Rails-to-Trails Act authorizes the Interstate Commerce Commission ("ICC") to preserve unused railway rights-of-way for future use, or to "railbank" them, and use

them as recreational trails. See Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5-8 (1990) ("Preseault I"). If a state, municipality, or private group is willing to assume financial and managerial responsibility for the right-of-way, the railroad must transfer the right-of-way to it for trail use, rather than abandon the right-of-way. 16 U.S.C. § 1247(d). Congress provided in the Rails-to-Trails Act that conversions to trail use that were subject to reactivation of rail service on the route did not constitute abandonment. Id. ("[I]n the case of interim use . . . if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."). Of course, the railroad might have already abandoned its right-of-way before the conversion to a trail, irrespective of the Act.

In October 2004, Phillips sued the United States, alleging that the conversion of the railroad right-of-way to a recreational trail constituted a taking of its property for which compensation was owed under the Fifth Amendment. The parties filed cross-motions for summary judgment, and the Court of Federal Claims granted Phillips' motion, holding that the conversion to a recreational trail had effected a taking. The court relied on Hash II. In Hash II, the plaintiffs, landowners in Idaho, had sued the United States for a Fifth Amendment taking arising from the conversion to a recreational trail of a railroad right-of-way traversing their lands. 403 F.3d at 1310. Certain plaintiffs in Hash II, known as "Category 1" plaintiffs, were landowners whose land was initially public. A railroad acquired a right-of-way through that land pursuant to the 1875 Act, and the private landowners then obtained the land pursuant to the Homestead Act of 1862, 12 Stat. 392 (codified as 43 U.S.C. § 161 (enacted 1891)) (repealed Pub. L. No.

94-579, 90 Stat. 2787 (1976)). Hash II, 403 F.3d at 1312-13. We held that, for the Category 1 landowners, the ownership of the underlying land passed to the landowners, and did not remain with the United States. Id. at 1313-18. Thus, we held that the United States did not own a fee interest in the right-of-way, but instead that the Category 1 landowners owned the land subject to a right-of-way easement. Id. at 1318. We then stated the following:

> We conclude that the land of Category 1 is owned in fee by the landowners, subject to the railway easement. The district court's contrary decision is reversed. On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the Preseault cases. On remand the district court shall determine just compensation on the conditions that apply to these landowners.

Id.

In holding that the conversion of the right-of-way traversing Phillips' land had effected a taking, the Court of Federal Claims reasoned that it was bound by Hash II, in which we held both that the United States' interest in the railroad corridor was an easement, and that the easement had been abandoned. Summary Judgment Opinion, 77 Fed. Cl. at 394. The court first addressed the government's argument that the finding of liability in Hash II was contingent upon a future finding of abandonment, rather than Hash II actually holding that the easement had been abandoned. The court reasoned that our conclusion was neither contingent nor hypothetical, as we found takings liability and instructed the district court in that case to compute damages. Summary Judgment Opinion, 77 Fed. Cl. at 393. The court also reasoned that the Court of Federal Claims had similarly treated the Hash II conclusion as binding on the

questions of the scope of the easement and abandonment in <u>Blendu v. United States</u>, 75 Fed. Cl. 543 (2007).  <u>Summary Judgment Opinion</u>, 77 Fed. Cl. at 393-94.

The court next addressed whether <u>Hash II</u> should be limited to the facts of that case and determined that the holding was not so limited.  The court reasoned that Phillips was similarly situated to the Category 1 plaintiffs regarding the facts that we had deemed important:

> The only facts recited by the Federal Circuit [in <u>Hash II</u>] are that the railroad acquired the right-of-way across public land pursuant to the 1875 Act, that the land was later transferred to homesteaders subject to the railroad right-of-way, and that the right-of-way was converted to interim trail use under the Rails-to-Trails Act.  The operative facts of this case are no different from those recited by the Federal Circuit in <u>Hash II</u> or those present in <u>Blendu</u>.  The inescapable conclusion is that, under <u>Hash II</u>, conversion of 1875 Act rights-of-way to trail use constitutes abandonment as a matter of law.

<u>Summary Judgment Opinion</u>, 77 Fed. Cl. at 394.  The court found that "[t]he absence of any predicate to the Federal Circuit's conclusory statement regarding abandonment is troublesome for both the litigants in <u>Hash</u> and for courts attempting to apply correctly precedent in other 1875 Act conversions."  <u>Id.</u> at 395.  However, the court found that "[t]he discussion of Category 1 and the concluding paragraph in <u>Hash II</u> must be read as a determination that conversions of 1875 Act easements to trail use constitute abandonment and give rise to takings liability.  Therefore, we must hold the Government liable for a taking of [Phillips'] property."  <u>Id.</u> at 396.

The government then moved to have the Court of Federal Claims certify its opinion for interlocutory appeal to this court.  The trial court granted the motion, stating that the government had "met all three statutory requirements for certification set forth in 28 U.S.C. § 1292(d)(2)."  <u>Certifying Order</u>, No. 04-1544-L, slip op. at 3.  The court found that there was substantial ground for disagreement about a controlling question of law

because "the Federal Circuit's statement in Hash II regarding the Government's takings liability is subject to different interpretations than the one applied by [the trial court]." Id., slip op. at 6. For example, the court stated that "Hash II may not be conclusive of the Government's liability in this case at all." Id. The government petitioned this court for permission to appeal, and we granted the government's petition. Order Granting Petition, 267 F. App'x 943. We have jurisdiction pursuant to 28 U.S.C. § 1292(d)(2).

DISCUSSION

We review summary judgment determinations de novo. Arko Executive Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009). "Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Id.

The government argues that the conclusory paragraph in Hash II, quoted supra, cannot be determinative of its liability in this case. First, according to the government, the question of liability was not briefed or argued in Hash v. United States, No. CV 99-324-S-MHW, 2001 WL 35986188 (D. Idaho Nov. 27, 2001) ("Hash I"), or Hash II, so Hash II cannot be read to have decided takings liability, but only that the property right of the United States in that case was an easement. Second, and alternatively, according to the government, even if Hash II did decide takings liability, the decision rested on abandonment, not on the scope of the easement. Abandonment is, according to the government, a state law question that is different in Idaho and Colorado and depends on the specific facts of the case, so a determination of abandonment in Hash II would not affect abandonment in this case. Furthermore, a determination of the scope of the easement would have required an examination of multiple statutes and would

depend on when the land was conveyed and the law in effect at the time. According to the government, the Supreme Court has recognized in Preseault I, 494 U.S. at 16, that only some rail-to-trail conversions will amount to takings, and this court has recognized in Preseault v. United States, 100 F.3d 1525 (Fed. Cir. 1996) (en banc) ("Preseault II") that the questions of scope and abandonment of easements typically are complex. Thus, the government argues, Hash II cannot be read to hold the United States liable for a taking per se. Because the only issue on appeal is whether Hash II dictates a finding of liability, the government argues that the merits of liability cannot be decided in this appeal. However, the government asserts that, if we were to decide the merits of liability, the 1875 Act is broad enough to encompass trail use, as recognized by Congress's subsequent enactment of 43 U.S.C. § 913, which occurred before the property interest at issue in this case was conveyed to any private party.

Phillips responds that the issue of liability was decided in Hash II, and that Hash II must have rested on the scope, not abandonment, of the easement, as the taking of a reversionary interest in a right-of-way is compensable regardless whether the right-of-way has been abandoned. Further, according to Phillips, the scope of the easement granted under the 1875 Act was limited to railroad use. Finally, Phillips argues that all cases arising under the 1875 Act involve the same or similar facts, so the language in Preseault I concerning the need to examine each parcel separately to determine compensation rights, if any, does not apply to 1875 Act claims.

As an initial matter, we agree with Phillips that, in Hash II, we determined that there was liability for a taking, not simply that there was an easement. Not only did we state that "these owners' property interests were taken for public use," but we then

directed the district court to "determine just compensation on the conditions that apply to these landowners," i.e., to determine damages based on our determination of liability. Hash II, 403 F.3d at 1318. Our decision therefore unambiguously found takings liability.

What is left for us to determine here is the basis for our holding of liability in Hash II, and whether it requires us to hold that conversion of a railroad to a public trail under the 1875 Act is a taking per se. In Preseault I, the Supreme Court held that if a conversion to a trail gives rise to a taking, compensation is available, satisfying the requirements of the Fifth Amendment. 494 U.S. at 4-5. However, the Supreme Court added that "under any view of takings law, only some rail-to-trail conversions will amount to takings. . . . Others are held as easements that do not even as a matter of state law revert upon interim use as nature trails." Id. at 16 (internal citation and footnote omitted). The Court declined to decide whether a taking had occurred. Id. at 17. Preseault then brought a claim in the Court of Federal Claims for a taking, and, deciding the appeal en banc, we laid out a framework for deciding takings liability in cases arising under the Rails-to-Trails Act. Preseault II, 100 F.3d 1525.

Under Preseault II, the determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time

held a fee simple unencumbered by the easement (abandonment of the easement). 100 F.3d at 1533.

We conclude that Hash II does not preclude the trial court from deciding either the scope of the easement granted under the 1875 Act or, if the scope was broader than railroad use, whether in this case the easement was abandoned. Regarding the ownership of the underlying estate, neither party disputes that in this case, in which the railroad acquired the right-of-way under the 1875 Act, the railroad acquired only an easement under the Hash II analysis, leaving the residual estate in the hands of Phillips and only the scope and abandonment issues in question. Moreover, we agree with the government that Hash II was decided as a question of abandonment. As we stated in Hash II, "[o]n the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the Preseault cases." 403 F.3d at 1318 (emphasis added). Therefore, our holding in Hash II that the conversion to a trail was a taking rested on the prior conclusion that the railway abandoned the right-of-way. The taking occurred separately, presumably upon issuance of a Notice of Interim Trail Use or Abandonment under the Rails-to-Trails Act. See Barclay v. United States, 443 F.3d 1368, 1374.

In Preseault II, we also held that abandonment was a question of "fact, and the fact that the question relates to a right of way taken by a railroad company does not make it one of law." 100 F.3d at 1546 (internal citation and quotation marks omitted); Thus, the question whether the railroad has abandoned its right-of-way in this case cannot be governed by Hash II, which occurred with an inherently different set of facts.

For example, we do not know in Hash II how long the railroad corridor had gone unused. Accordingly, Hash II cannot have held that conversion of an 1875 Act right-of-way into a trail is, per se, abandonment.

Hash II decided that the railroad had abandoned its right-of-way under the facts of that case, but the question remains whether Hash II also decided that the scope of the easement provided by the 1875 Act excluded trail use. In Preseault II, we decided that issue, viz., the scope of an easement, based on a government admission that the scope of the original easement in that case was limited to railroad purposes, 100 F.3d at 1541-44, but here the government argues that the easement provided by the 1875 Act is not limited to railroad purposes, making no such admission as in Preseault II. Because the parties did not argue scope in Hash II, there was no such admission limiting the scope of the 1875 Act easements to railroad purposes in Hash II either. Because Hash II states that its holding followed "the principles set forth in the Preseault cases," and the Preseault cases addressed only a situation in which the government conceded that the original easement was limited to railroad purposes, it cannot be correct that the holding of Hash II precludes examination of the issue of scope here. The question of the scope of the easement provided by the 1875 Act therefore has not been addressed in this court and needs to be first decided by the Court of Federal Claims.

Although it may be, as Phillips argues, that the scope of the easement provided by the 1875 Act does not encompass trail use, irrespective of when the land was conveyed to a private party, neither party has extensively briefed the question, and the Court of Federal Claims did not address it; instead, the court's opinion and the briefing

before this court focused on whether <u>Hash II</u> dictates liability in this case. Because we hold that <u>Hash II</u> did not decide the scope of the easement granted under the 1875 Act, and the abandonment determination was limited to the facts of that case, we vacate the court's judgment and remand for further consideration of the dual questions whether the easement in this case covers trail use and, if so, whether the railroad terminated its right-of-way by abandonment.

## CONCLUSION

Accordingly, the judgment of the Court of Federal Claims is vacated and the case is remanded for further action consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>