ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --                                    )
                                                )
Fluor Intercontinental, Inc.                    )        ASBCA No. 60729
                                                )
Under Contract No. W52PIJ-07-D-0008             )

APPEARANCES FOR THE APPELLANT:          Gregory A. Smith, Esq.
                                        Zachary D. Prince, Esq.
                                        Daniel Q. Horner, Esq.
                                          Smith Pachter McWhorter PLC
                                          Tysons Corner, VA

                                        Donald M. Yenovkian II, Esq.
                                        Senior Counsel

APPEARANCES FOR THE GOVERNMENT:         Raymond M. Saunders, Esq.
                                          Army Chief Trial Attorney
                                        MAJ Christopher M. Coy, JA
                                          Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The government moves for summary judgment, contending that a modification converted the third and fourth option years (OY3, OY4) of a task order to cost plus a fixed fee of 5.87 percent. The government also requests that we remand the 12-month extension period after OY4 to the parties for negotiation of the fee. Appellant, Fluor Intercontinental, Inc. (Fluor), opposes. We deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following facts are undisputed for purposes of the motion, unless stated otherwise.

1. In early 2009, the Army awarded Fluor task order 5 (TO5) on the above-referenced contract to provide a menu of services in Afghanistan on a cost-plus-award-fee basis. TO5 included a base year and four option years. Ultimately, the Army exercised all of the options and extended the task order for an additional 12-month term beyond OY4. (R4, tabs 1, 37, 56)

2. The Army did not simply exercise the options for each year. Rather, its practice was to issue a request for proposals (RFP) for each option in an apparent recognition that the work was evolving. For example, with respect to OY2, the Army issued an RFP on 13 February 2012 stating that it (the RFP) "reflects the Government's realization that costs above the competitively established matrix pricing baseline may be incurred, as a result of changes to the matrix baseline.... Fluor should thus use their experiential knowledge of operations in Theater as of the date of this letter to determine appropriate costs for OY2...." (R4, tab 53 at 527)

3. During the performance of OY2, the parties signed bilateral Modification No. 60 (Mod. 60) (R4, tab 37). While this modification accomplished a number of things, the following language concerning the conversion of the task order from cost plus award fee to cost plus fixed fee is central to this dispute:

> The purpose of Modification 60...is as follows:
>
> ....
>
> 2. To convert Task Order 0005 from a Cost-Plus-Award-Fee (CPAF) to a Cost-Plus-Fixed-Fee (CPFF) type task order, retroactive to the beginning of Option Year 2 (OY2), 01 July 2012. Under the CPAF task order, percentages were agreed to for Base Fee and the calculation of available Award Fee pools for evaluation periods. This Modification converts the Task Order - retroactive to the above date - to a CPFF type task order with a single negotiated fixed fee of 5.87%, hereupon eliminating Base and Award Fee provisions.

(R4, tab 37 at 374)

4. On 6 March 2013 (the day after execution of Mod. 60), the Army issued an RFP for OY3 (R4, tab 53 at 548). The RFP once again recognized the Army's need for pricing in light of actual conditions, stating, for example, that "[d]uring performance under TO 0005 there have been a number of topics addressed which may be identified as changes or which may cause a cost increase to the TO." It then proceeded to list several changes that the parties had already discussed and that Fluor should address in its proposal, such as "[s]ignificant scope discrepancies from matrix assumptions within each band, or services not included in matrix pricing." (*Id.*)

5. Further, the RFP stated that "current drawdown efforts have introduced a new set of potential changes and/or cost impacts to the TO" (R4, tab 53 at 548). It then

2

proceeded to list several of these changes, including the cessation of services due to the closing of forward operating bases in OY2 and OY3, and "[d]irectives for accelerated drawdown of services and revisions to TO performance standards" (*id.* at 549).

6. On 29 April 2013, Fluor submitted a proposal for OY3 that included a fixed fee of 7.5 percent (R4, tab 38 at 3). According to Fluor, the Army first took the position that Mod. 60 had established a fixed fee of 5.87 percent for OY3 and OY4 in late June 2013 (*see* app. supp. R4, tabs A8, A9). The Army issued a unilateral modification exercising OY3 (incorporating the 5.87 percent fee) in the amount of $1,257,437,861.57 on 28 June 2013 (R4, tab 39).

7. The Army subsequently issued an RFP for OY4 (R4, tab 53 at 63), resulting in bilateral Modification No. 81, which included a fixed fee of 5.87 percent. The modification contained language reflecting the parties' dispute as to whether Mod. 60 had established a 5.87 percent fee for the remainder of the task order and preserved Fluor's right to submit a claim. (R4, tab 48 at 455-56) The Army later issued a 12-month extension to the OY4 performance period that once again included a 5.87 percent fee (app. supp. R4, tab A15).

8. On 26 January 2016, Fluor submitted a certified claim in which it sought an increased fee for OY3, OY4 and the OY4 extension period (R4, tab 53). The contracting officer issued a final decision on 9 May 2016 denying the claim as to OY3 and OY4, but agreeing with Flour's position that Mod. 60 did not apply to the OY4 extension period (R4, tab 56 at 1-3). However, the parties have been unable to negotiate a resolution to this discrete period.

Fluor filed a timely notice of appeal on 5 August 2016.

DECISION

Pursuant to Board Rule 7(c)(2), the Board looks to Rule 56 of the Federal Rules of Civil Procedure for guidance in deciding motions for summary judgment. Under FED. R. CIV. P. 56(a), the Board may grant summary judgment if there is no genuine dispute as to any material fact. In considering such a motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The first issue to be addressed is whether Mod. 60 was sufficiently clear in establishing a fixed fee of 5.87 percent for OY3 and OY4 that we should grant summary judgment to the government. If the terms of a contract are clear, we must give them their plain and ordinary meaning and may not consider extrinsic evidence. *See, e.g.,* *Shell Oil Co. v. United States*, 751 F.3d 1282, 1295 (Fed. Cir. 2014). The contract must

be construed as a whole and in a manner that gives meaning to all of its provisions and makes sense. *Bell/Heery, J.V. v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014). Before arriving at a legal reading of a contract provision, judges must consider the context and intentions of the parties. *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999). Although extrinsic evidence generally may not be considered when a contract is unambiguous, in some cases the Court of Appeals for the Federal Circuit has considered it to confirm that the words of the contract had their plain and ordinary meaning. *Shell Oil Co.*, 751 F.3d at 1296; *TEG-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338-39 (Fed. Cir. 2006).

The government contends, that the following language from Mod. 60 should be read to provide for a fixed fee on OY3 and OY4:

> The purpose of Mod. 60... is as follows:...
>
> ....
>
> 2. To convert Task Order 0005 from a Cost-Plus-Award-Fee (CPAF) to a Cost-Plus-Fixed-Fee (CPFF) type task order, retroactive to the beginning of Option Year 2 (OY2).... This Modification converts the Task Order...to a CPFF type task order with a single negotiated fixed fee of 5.87%....

(SOF ¶ 3)

Looking at this language in isolation, we agree with the government. The clear meaning of this provision is that TO5 would be a cost-plus-fixed-fee task order starting at the beginning of OY2 and that the fixed fee would be 5.87 percent. But we must take a wider view and consider the entire contract and the context in which the parties executed Mod. 60. This leads us to deny the motion.

The government contends that the parties intended to agree on a fee of 5.87 percent for OY3 and OY4. By contrast, Fluor contends that at the time of Mod. 60 execution the scope of work was in such a state of flux (*see* SOF ¶¶ 2, 4-5), that the Army had not even issued RFPs for those years (SOF ¶¶ 4, 7), and that the parties did not intend to agree on a fee for any year beyond OY2 (Fluor br. at 11).[*] In general, the government must execute options in exact accordance with the terms of the contract. *Arko Executive Services, Inc. v. United States*, 553 F.3d 1375, 1379 (Fed. Cir. 2009). Fluor refers us to its proposal for OY3, which reflects more than

---

[*] The government has not disputed Fluor's factual assertions but Fluor has not cross-moved for summary judgment.

4

$1 *billion* in "cost of work added" compared to its estimate from the original pricing matrix (Fluor br. at 11-12 (citing R4, tab 38)). While the government exercised the modification in an amount somewhat lower than Fluor's proposal (SOF ¶ 6), the question remains the same: taking into account the evolving nature of the work and the war in Afghanistan, what did the parties intend to accomplish through Mod. 60? We cannot answer such a question on summary judgment.

While we make no determination as to whether the outcome of this appeal will turn on extrinsic evidence, we observe that Fluor has detailed at least some of the protracted negotiations that led to Mod. 60. We have not seen anything to date that indicates that the parties intended to set a 5.87 percent fee for OY3 and OY4. Rather, there is at least some evidence that supports Fluor's position that the parties only negotiated the fee for OY2. For example, on 19 December 2012, a senior Army official emailed a Fluor official about the status of negotiations stating:

> Eleanor,
> I know you are travelling today but wanted to commit to writing what I believe you and I agreed to yesterday.
>
> 1. The Government will convert option year two to a cost-plus fixed fee effective July 1, 2012 with a total fee of 5.87%.

(App. supp. R4, tab A4)

This email proceeds to touch upon other points but does not mention any negotiations at all with respect to OY3 or OY4.

We conclude that the record must be developed further before we can make an informed interpretation of Mod. 60.

Finally, with respect to the government's request that we remand the OY4 extension period for the parties to negotiate a resolution, based on the parties' inability to negotiate a resolution after the contracting officer's final decision, we do not believe that a remand would be appropriate at this time.

## CONCLUSION

The government's motion for summary judgment is denied.

Dated: 3 May 2017

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60729, Appeal of Fluor Intercontinental, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6