**ITT FEDERAL SERVICES CORPORATION,**
Appellant,

v.

**Sheila WIDNALL, Secretary of the Air Force, Appellee.**

No. 97–1258.

United States Court of Appeals, Federal Circuit.

Dec. 31, 1997.

Thomas G. Jeter, McKenna & Cuneo, L.L.P., Denver, CO, for appellant. With him on the brief was Mark J. Meagher.

Ronald G. Morgan, Attorney, U.S. Department of Justice, of Washington, DC, for appellee. Of counsel were David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director. Also of counsel was Captain Jennifer J. Snider, Attorney, U.S. Air Force, Arlington, VA.

Before NEWMAN, PLAGER, and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Following the expiration of a firm, fixed-price contract between ITT Federal Services Corporation and the United States Air Force, ITT seeks to recover the cost of severance payments to six employees who could not be placed with ITT or the successor contractor. The Armed Services Board of Contract Appeals held, on summary judgment, that these costs are not reimbursable on either of ITT's theories of recovery. Thus the Board held that these severance costs were not recoverable under the "abnormal or mass severance" cost principle, FAR 31.205–6(g)(2)(iii), 48 C.F.R. § 31.205–6(g)(2)(iii), nor under the Continuity of Services clause, FAR 52.237–3, 48 C.F.R. § 52.237–3. We affirm the Board's decision.[1]

## DISCUSSION

■ This appeal is governed by the Contract Disputes Act, which provides:

The decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or

---

1. *ITT Fed. Servs. Corp. v. Widnall,* ASBCA No. 46146, 97–1 BCA ¶ 28,655 (Nov. 22, 1996).

so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b). Determination of the meaning of provisions of the contract, including provisions of the Federal Acquisition Regulations (FAR) that are incorporated into the contract, is a question of law for which the Board's decision is not final, *Aydin Corp. v. Widnall,* 61 F.3d 1571, 1577 (Fed.Cir. 1995); *Ingalls Shipbuilding, Inc. v. O'Keefe,* 986 F.2d 486, 488 (Fed.Cir.1993), although we take due cognizance of the Board's experience in interpreting the FAR. The Board's findings of fact receive deferential review, on the criteria set forth in § 609(b).

■ Summary judgment is appropriate when no material fact is in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Upon appellate review we first determine whether the matter was amenable to summary resolution and, if so, whether the correct law was applied to undisputed facts. *C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1541–42 (Fed.Cir.1993). If material facts are in dispute summary judgment may nonetheless be granted if, after all factual inferences are drawn in favor of the party opposing summary judgment, that party still could not prevail. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

The contract at issue is the last of three consecutive five-year, firm, fixed-price contracts by which ITT provided data support services at the Phillips Laboratory at Edwards Air Force Base in California. Of a total contract work force of approximately sixty persons, at contract expiration ITT was able to place all but six eligible employees. It was ITT's practice to pay severance to employees not retained or placed at contract termination or expiration, and ITT did so, in amounts in conformity with ITT's severance policy which included standards for eligibility and a formula for calculation of the amount payable. ITT sought reimbursement for these payments from the Air Force.

The contracting officer denied ITT's claim. The Board affirmed, on the ground that this was a firm, fixed-price contract wherein the contractor bears all costs, including any costs incurred upon contract expiration, without additional compensation unless the contract itself provides for a price adjustment, and on the ground that the severance payments were not recoverable under the Continuity of Services clause. This appeal followed.

*A*

■ ITT states that the severance of six employees, ten percent of its workforce, is an "abnormal or mass" severance for which the government is required to pay its "fair share" in accordance with FAR 31.205–6(g)(2)(iii). ITT states that it was prohibited by the Cost Accounting Standards of the FAR from including, in its fixed-price contract, accruals for the cost of abnormal or mass severance upon termination, referring to the FAR principles incorporated into the contract that specifically address severance pay:

**[FAR] 31.205–6 Compensation for personal services.**

\*    \*    \*    \*    \*    \*

**(g) Severance pay.**

(1) Severance pay, also commonly referred to as dismissal wages, is a payment in addition to regular salaries and wages by contractors to workers whose employment is being involuntarily terminated. . . .

(2) Severance pay to be allowable must meet the general allowability criteria in subdivision (g)(2)(i) below, and, depending upon whether the severance is normal or abnormal, criteria in subdivision (g)(2)(ii) for normal severance pay or subdivision (g)(2)(iii) for abnormal severance pay also apply.

(i) Severance pay is allowable only to the extent that, in each case, it is required by (A) law; (B) employer-employee agreement; (C) established policy that constitutes, in effect, an implied agreement on the contractor's part; or (D) circumstances of the particular employment . . . .

(ii) Actual normal turnover severance payments shall be allocated to all work performed in the contractor's plant, or where the contractor provides for accrual

of pay for normal severances, that method will be acceptable if the amount of the accrual is reasonable . . . .

(iii) *Abnormal or mass severance pay* is of such a conjectural nature that measurement of costs by means of an accrual will not achieve equity to both parties. Thus, *accruals for this purpose are not allowable.* However, *the Government recognizes its obligation to participate, to the extent of its fair share,* in any specific payment. Thus, allowability will be considered on a case-by-case basis.

48 C.F.R. § 31.205–6(g) (emphases added).

The various cost principles of the FAR are deemed to represent "a composite of sound accounting rules." *Lockheed Aircraft Corp. v. United States,* 179 Ct.Cl. 545, 375 F.2d 786, 793 (1967). The cost principles at FAR 31.205–6(g)(2)(ii) permit the contractor in a firm, fixed-price contract to provide for accrual of normal turnover severance pay. The cost principles also encourage agencies and contractors to seek advance agreement on the treatment of severance costs. *See* FAR 31.109(h)(11), 48 C.F.R. § 31.109(h)(11) (citing "severance pay to employees on support service contracts" as an example of a cost for which advance agreements may be "particularly important").

ITT's position is that these severance costs for six employees were not normal turnover, for which ITT would have been responsible under its firm, fixed-price contract, but abnormal or mass severance costs, for which accrual was barred but the recovery of a fair share provided for under FAR 31.205–6(g)(2)(iii). ITT argues that the cost principle of subclause (g)(2)(iii), when read with Cost Accounting Standard (CAS) 405, 48 C.F.R. § 9904.405–40(a), entitles ITT to reimbursement for a fair share of this severance cost. CAS 405–40(a), which was also incorporated into the contract, provides:

**CAS 405–40(a).** Costs expressly unallowable or mutually agreed to be unallowable, including costs mutually agreed to be unallowable directly associated costs, shall be identified and excluded from any billing,

claim, or proposal applicable to a Government contract.

48 C.F.R. § 9904.405–40(a).

■ The Board held that the cost principle at FAR 31.205–6(g)(2)(iii) does not provide for the recovery of the severance cost. The Board held that in a firm, fixed-price contract situation, the contractor assumes maximum risk and full responsibility for all such costs that may be incurred. *See* FAR 16.202–1, 48 C.F.R. § 16.202–1. Although ITT argues that after fifteen years it and its employees expected the contract to continue, the fact that the contract expired was not an abnormal event. Assuming, without deciding, that FAR 31.205–6(g)(2)(iii) is a remedy-granting provision, absent extraordinary circumstances, not present here, abnormal or mass severance within the contemplation of that clause does not occur when a contract expires in accordance with its terms. Therefore, the severance payments were normal severance when viewed in the context of the expiration of the contract, a foreseeable and expected event when a firm, fixed-price contract is entered into. The Board correctly held that ITT was not entitled to recovery or sharing of these severance costs.

### B

■ The Board also held that the Continuity of Services clause of the contract did not support ITT's claim. The Continuity of Services clause provides as follows:

**[FAR] 52.237–3 Continuity of Services.**

As prescribed in 37.110(c), the following clause may be included in solicitations and contracts for services when the Government anticipates difficulties during the transition from one contractor to another or to the Government. The 60–day period in paragraph (b) may be varied from 30 to 90 days.

CONTINUITY OF SERVICES (APR 1984)

(a) The Contractor recognizes that the services under this contract are vital to the Government and must be continued without interruption and that, upon contract expiration, a successor, either the Government or another contractor, may continue

them. The Contractor agrees to (1) furnish phase-in training and (2) exercise its best efforts and cooperation to effect an orderly and efficient transition to a successor.

(b) The Contractor shall, upon the Contracting Officer's written notice, (1) furnish phase-in, phase-out services for up to 60 days after this contract expires and (2) negotiate in good faith a plan with a successor to determine the nature and extent of phase-in, phase-out services required. The plan shall specify a training program and a date for transferring responsibilities for each division of work described in the plan, and shall be subject to the Contracting Officer's approval. The Contractor shall provide sufficient experienced personnel during the phase-in, phase-out period to ensure that the services called for by this contract are maintained at the required level of proficiency.

(c) The Contractor shall allow as many personnel as practicable to remain on the job to help the successor maintain the continuity and consistency of the services required by this contract. The Contractor also shall disclose necessary personnel records and allow the successor to conduct onsite interviews with these employees. If selected employees are agreeable to the change, the Contractor shall release them at a mutually agreeable date and negotiate transfer of their earned fringe benefits to the successor.

(d) The Contractor shall be reimbursed for all reasonable phase-in, phase-out costs (i.e., costs incurred within the agreed period after contract expiration that result from phase-in, phase-out operations) and a fee (profit) not to exceed a pro rata portion of the fee (profit) under this contract.

48 C.F.R. § 52.237–3.

The contract expired on March 31, 1992. The agreed period for phase-in, phase-out was from April 1, 1992 to April 30, 1992. ITT stated that the six severance payments were reasonable phase-out costs recoverable under the Continuity of Services clause. The Board disagreed, observing that the employees left ITT's employment by the end of March 1992, before the period of phase-out, and that therefore "the cost of severance pay could not have been incurred in accordance with the Continuity of Services clause." We agree with the Board that ITT was not entitled to recover the cost of severance payments under the Continuity of Services clause, although we arrive at that result by a somewhat different route.

The purpose of the Continuity of Services clause is to facilitate the transition from one contractor to another or to the government. The original contractor is required, upon notice, to provide appropriate transition services, and to be reimbursed therefor. The term "phase-in, phase-out operations" means activities that assist a new contractor or the government in connection with the transition.

Severance payments are not phase-in, phase-out costs. They do not result from activities designed to assist a new contractor or the government in taking over operations, and are not designed to assure the continuity of services during a transition period. The severance payments here at issue arose from ITT's established severance policy. The severance payments were not related to the purpose of the Continuity of Services clause, and had no role in effecting a transfer of operations. ITT did not incur any severance obligation to these six employees because of phase-out activity. Therefore, ITT was not entitled to recover its severance costs under the Continuity of Services clause.

No costs.

*AFFIRMED.*