ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Government Contracting Resources, Inc. | )     ASBCA No. 59162 |
| | ) |
| Under Contract No. NNK08OB12C | ) |

APPEARANCE FOR THE APPELLANT:     Jennifer M. Miller, Esq.
    Wyrick Robbins Yates & Ponton LLP
    Raleigh, NC

APPEARANCES FOR THE GOVERNMENT:     Scott Barber, Esq.
    NASA Chief Trial Attorney
    Charles Alexander Vinson, Esq.
    Assistant Chief Counsel
    Miata L. Coleman, Esq.
    Trial Attorney
    Kennedy Space Center, FL

## OPINION BY ADMINISTRATIVE JUDGE MELNICK

In this appeal, appellant, Government Contracting Resources, Inc. (GCR), seeks additional compensation for severance costs it incurred, along with its subcontractor, after its contract with NASA expired. It claims entitlement under the FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) clause. The parties have chosen to proceed solely upon the record submitted, pursuant to Board Rule 11. Only entitlement is before the Board for decision. The appeal is sustained.

## FINDINGS OF FACT

1. On 11 July 2008, NASA awarded the firm-fixed-price contract referenced above to GCR for the distribution of mail at the Kennedy Space Center (R4, tab 2 at 64). The contract had a base year and four option years (R4, tab 2 at 68, 88). The contract incorporated by reference the FAR 52.222-41, SERVICE CONTRACT ACT OF 1965, AS AMENDED (JUL 2005) clause, and the FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (NOV 2006) clause (R4, tab 2 at 103).

2. GCR subcontracted work with Creative Management Technology, Inc. (CMT), and began performance on 1 October 2008 (app. br. at 2; gov't resp. at 6;

compl. and answer ¶ 2). NASA exercised all contract option periods, and GCR completed all contract work (compl. and answer ¶¶ 4, 12).

3. Contract Modification No. 008, dated 15 September 2009, incorporated by reference into the contract a collective bargaining agreement (CBA) between GCR, CMT, and the International Association of Machinists and Aerospace Workers (IAMAW), effective 1 April 2009 and expiring 31 March 2012 (R4, tab 2 at 10-11; supp. R4, tab 12).[1] The CBA granted severance pay to those employees with 6 months or more of service with either company, or predecessor contractors, at the employees' current rates of pay when laid off for a period exceeding 30 days because of lack of work. The CBA dictated the length of time an employee received severance based upon length of service. However, the CBA relieved GCR from paying severance to any employee hired by a successor contractor to a position requiring similar skills, or to perform greater responsibilities, within 30 days of the end of their employment. (Supp. R4, tab 12 at 36-37)[2] On 23 October 2012, Modification No. 41 incorporated into the contract an updated CBA between GCR, CMT, and IAMAW, dated 1 April 2012 and expiring 31 March 2015. The severance terms of the updated CBA are virtually identical to the previous version. (R4, tab 2 at 56-57; compl. ex. 1 at 1, 36-37)

4. In August 2013, GCR learned that, upon expiration of the contract, NASA did not intend to award the contract again on the same terms. Instead, NASA would award the mail work to a program that employed blind and disabled workers. (Albritton decl. ¶ 13[3]) Subsequently, the Anthony Wayne Rehabilitation Center, NASA's awardee for the successor contract, sent a letter to GCR notifying it that five of GCR/CMT's union employees would be hired (R4, tab 3 at 97; Albritton decl. ¶ 15). Accordingly, on 28 August 2013, GCR notified NASA that 13 union employees would be entitled to severance pay under the CBA, and GCR would be submitting a Request for Equitable Adjustment to NASA for the associated cost (R4, tab 3 at 5). In a Request for Equitable Adjustment dated 30 September 2013, GCR elaborated that 6 of the 13 unemployed workers had worked for it, while 7 had been employed by CMT. GCR stated that its total liability was $105,443.82 and CMT's was $108,755.18, totaling $214,199.00 that GCR sought from NASA (R4, tab 5 at 2-3). On 6 November 2013, NASA denied the equitable adjustment (R4, tab 4).

---

[1] The government relies upon a document included with the solicitation to contend that the relevant CBA terms applied to this contract from the time of its award. However, that document is merely an unsigned draft of a CBA between the IAMAW and another company (R4, tab 8 at 110).

[2] Page numbers referred to are at the bottom center of each page.

[3] On 11 July 2014, GCR proffered the declarations of Michael Albritton and John M. Aldridge, Jr. The declarations were admitted into evidence on 2 September 2014 and are maintained in the Board's correspondence file.

2

5. After GCR's contract expired, GCR and CMT laid off 18 bargaining unit employees. Five were hired by the successor contractor, leaving 13 eligible for severance payments. (Albritton decl. ¶¶ 17-18) GCR and CMT made severance payments to the 13 CBA severance eligible employees in October and November 2013 (app. supp. R4, tab 10; Albritton decl. ¶¶ 18-20).

6. At the time GCR submitted its proposal for the contract, it did not know if the contract would be re-awarded following expiration. Nor did GCR know who would be selected as a successor contractor, how many of GCR's employees would be hired by a successor, or how long those individuals would have previously been employed. GCR "did not include any actual, potential, contingent or speculative costs for the payment of severance compensation in its price proposal for the Contract." (Albritton decl. ¶ 12)

7. On 12 November 2013, GCR, through counsel, on behalf of itself and CMT, submitted a certified claim for $214,199 to the NASA contracting officer for the severance payments they made to laid off employees pursuant to the CBA (R4, tab 3). The contracting officer denied the claim in a decision dated 13 January 2014 (R4, tab 1). By letter dated 12 February 2014, GCR filed a timely notice of appeal from the final decision. The parties then elected to submit the entitlement portion of the appeal upon the record without a hearing, pursuant to Board Rule 11 (Bd. corr. ltr. dtd. 19 May 2014).

## DECISION

Under the Service Contract Act, most government service contracts, such as this one, contain clauses protecting workers' wages and fringe benefits. They do this by incorporating Department of Labor (DOL) minimum wage orders, or wage determinations, for each class of service worker employed in a locality, and require contractors to pay those determinations to their workers. 41 U.S.C. § 6703; FAR 52.222-41(c). Additionally, contractors are subject to a rule that requires successor contractors not to pay less than a predecessor paid under its CBA. FAR 52.222-41(f); *Lear Siegler Services, Inc. v. Rumsfeld,* 457 F.3d 1262, 1266-67 (Fed. Cir. 2006); *see also* 29 C.F.R. § 4.1b.

This service contract is also subject to FAR 52.222-43, FAIR LABOR STANDARDS ACT AND SERVICE CONTRACT ACT—PRICE ADJUSTMENT (MULTIPLE YEAR AND OPTION CONTRACTS) (NOV 2006) (Price Adjustment Clause) (finding 1). It states the following in pertinent part:

> (a) This clause applies to both contracts subject to area prevailing wage determinations and contracts subject to collective bargaining agreements.

3

(b) The Contractor warrants that the prices in this contract do not include any allowance for any contingency to cover increased costs for which adjustment is provided under this clause.

(c) The wage determination, issued under the Service Contract Act of 1965, as amended...Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, current on the anniversary date of a multiple year contract or the beginning of each renewal option period, shall apply to this contract....

(d) The contract price or contract unit price labor rates will be adjusted to reflect the Contractor's actual increase... in applicable wages and fringe benefits to the extent that the increase is made to comply with...

(1) The Department of Labor wage determination applicable on the anniversary date of the multiple year contract, or at the beginning of the renewal option period.

As the Price Adjustment Clause states, the applicable DOL wage determination applies to the contract at the beginning of each renewal period, and the contract's price will be adjusted when the contractor has to increase what it pays to comply with that determination. Contending that the wages and fringe benefits required by a CBA are a DOL wage determination, GCR seeks increased compensation for the severance payments that both it and CMT were required to make after contract expiration. GCR relies upon the Board's decision in *ARCTEC Services*, ASBCA No. 56444 *et al.*, 11-1 BCA ¶ 34,743, to support its claim.

NASA does not contest that the terms of the CBA are the applicable wage determination for this contract. Nor does it challenge GCR's suggestion that it may pass through to the government higher wage costs incurred by its subcontractor, CMT. NASA simply opposes by arguing that this is a fixed-price contract that has been subject to the same CBA severance terms from initial award. Therefore, from the outset, GCR bore the risk of severance payment costs that might arise. Nothing has changed to alter that risk.

A wage determination includes a CBA-defined benefit that a contractor is required to maintain. 41 U.S.C. § 6703; 29 C.F.R. § 4.50; *Lear Siegler Services*, 457 F.3d at 1268. Increases in the cost of providing that benefit, even if the benefit itself remains nominally unchanged, entitles a contractor to a price adjustment. "[T]he Price Adjustment Clause is triggered by changes in an *employer's cost of compliance* with

4

the terms of a [CBA dictated] wage determination." *Lear Siegler Services,* 457 F.3d at 1269; *see also United States v. Service Ventures, Inc.,* 899 F.2d 1 (Fed. Cir. 1990). This is especially the case when the "costs of compliance changed in a manner not known in advance with certainty." *Lear Siegler Services,* 457 F.3d at 1269. Thus, NASA is incorrect to focus upon the fact that the contract is fixed price. The question is not how the contractor is compensated by the government for its services, but whether the contractor has experienced an increase in its costs providing the benefits required by the applicable wage determination.

Against this backdrop, the Board's precedent in *ARCTEC* governs here. In *ARCTEC,* the contract also contained the Price Adjustment Clause and the majority of the line items were fixed price.[4] At the time of contract expiration, ARCTEC provided services at three facilities with employees working pursuant to CBAs and wage determinations that promised severance pay to those who were not hired by a successor contractor. Those CBAs and wage determinations had been incorporated into the contract midway through performance, but no price adjustment proposals were made at that time to account for severance payments because ARCTEC lacked information to determine how much severance would be due. After making severance payments, ARCTEC sought recovery under the Price Adjustment Clause. *ARTEC,* 11-1 BCA ¶ 34,743 at 171,030-34.

In its decision sustaining the appeal from the contracting officer's decision, the Board rejected the very argument advanced by NASA here, that the contractor bore the risk of the severance liability because of the fixed-price nature of the contract. Like NASA now, the government had relied heavily upon *ITT Federal Services Corp. v. Widnall,* 132 F.3d 1448 (Fed. Cir. 1997). However, that case had simply involved a contractor's attempt to recover for severance payments made pursuant to its own policies. It had nothing to do with CBA (and therefore applicable wage determination) mandated severance payments potentially subject to the Price Adjustment Clause. Accordingly, the Board distinguished *ARCTEC* with the following conclusion:

> Here, in contrast to the *ITT* case, the contractor is entitled to a price adjustment for the severance costs as a consequence of the wage determinations incorporating appellant's collective bargaining agreements with unionized employees at the three relevant sites into the contract. The DOL wage determinations and CBAs require the payment of severance costs upon expiration of the contract in certain circumstances. Pursuant to the

---

[4] Specifically, the fixed-price line items were Fixed Price Incentive Firm (Target) with Award Fee, which established a ceiling price but provided for the sharing of cost savings. *ARCTEC,* 11-1 BCA ¶ 34,743 at 171,031.

> Service Contract Price Adjustment clause, contractors are entitled to price adjustments to recover increased wages and fringe benefits resulting from required compliance with DOL wage determinations incorporated into the contract. Appellant paid covered employees in each of the three locations and the government does not dispute that those payments were required by, and made in accordance with, the CBAs. Accordingly, the contractor is entitled to a price adjustment under the clause.

*ARCTEC*, 11-1 BCA ¶ 34,743 at 171,036.[5]

NASA attempts to distinguish *ARCTEC* from this appeal by suggesting that the applicable CBAs there had not been incorporated into the contract upon its initial award, while the CBA here was incorporated from the start. NASA has not proven that fact since the draft CBA included with the original solicitation was not signed and purported to be between the union and another company. The first signed CBA incorporated into this contract was through Modification No. 008, over a year after award (finding 3). However, even if NASA was correct, the observation is irrelevant. What matters is not whether the particular CBA applied at or after contract award, but whether there have been changes in the cost of complying with its terms. *Lear Siegler Services*, 457 F.3d at 1268-69. In *ARCTEC*, the Board concluded that paying severance costs constituted just such an addition in the cost of complying with ARCTEC's CBAs. *ARCTEC* also indicated that at the time those CBAs were incorporated into the contract it could not be known whether severance costs would be owed because the contractor did not know if the contract would be reprocured, awarded to another contractor, or performed by other employees. *ARCTEC*, 11-1 BCA ¶ 34,743 at 171,033, 171,037. The same was true here, where GCR could not predict severance costs at the time of its initial price proposal (finding 6). This fact bolsters the conclusion that an adjustment is due under the Price Adjustment Clause because the "costs of compliance changed in a manner not known in advance with certainty." *Lear Siegler Services*, 457 F.3d at 1269.

In sum, there is no material distinction between this appeal and *ARCTEC*. Like *ARCTEC*, the contract is a fixed-price services contract containing the Price Adjustment Clause. The applicable wage determination is an incorporated CBA containing a severance pay clause. The contractor did not account for severance

---

[5] Similarly, *Express Transportation Organization of Thailand*, ASBCA No. 21946, 78-1 BCA ¶ 12,881, also relied upon by NASA, did not involve the application of the Price Adjustment Clause to additional wage determination compliance costs.

6

payments in its price proposal because it could not predict them at that time. The contract expired and the contractor then made the necessary severance payments as required by the CBA. In *ARCTEC,* the Board held that the contractor was entitled to a price adjustment under the Price Adjustment Clause for those severance pay costs. That holding controls here.

## CONCLUSION

The appeal with respect to entitlement is sustained. The appeal is remanded to the parties to negotiate quantum consistent with this decision.

Dated: 12 March 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59162, Appeal of Government Contracting Resources, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals