# United States Court of Appeals
# for the Federal Circuit

---

**ASSET PROTECTION & SECURITY SERVICES, L.P.,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES, AKIMA GLOBAL SERVICES, LLC,**

*Defendants-Appellees*

---

2021-1008

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00449-MBH, Senior Judge Marian Blank Horn.

---

Decided: July 19, 2021

---

DAVID THOMAS RALSTON, JR., Foley & Lardner LLP, Washington, DC, argued for plaintiff-appellant. Also represented by JULIA DI VITO, FRANK S. MURRAY, GEORGE ELLSWORTH QUILLIN.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN MATTHEW BOYNTON, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE.

CHE PETER DUNGAN, Miles & Stockbridge P.C., Washington, DC, argued for defendant-appellee Akima Global Services, LLC. Also represented by ROGER V. ABBOTT; ALFRED WURGLITZ, Rockville, MD.

_____

Before DYK, PROST*, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

The U.S. Immigration and Customs Enforcement (ICE) awarded a contract to Akima Global Services, LLC to provide services at one of ICE's detention facilities in Arizona. Asset Protection and Security Services, L.P., an unsuccessful bidder, brought a bid protest action in the Court of Federal Claims ("Claims Court"), challenging the award. The Claims Court held that Asset was without standing to challenge the award. We affirm.

BACKGROUND

The pertinent facts are not in dispute. In 2016, ICE issued a solicitation for a contractor to provide detention, food, and transportation services at its Florence Detention Center in Arizona. Asset was the incumbent contractor. The solicitation went through various modifications and amendments and provided several evaluation factors. Under the original solicitation, ICE indicated that proposals would "be evaluated for price realism, completeness, and reasonableness." J.A. 430.

While this version of the solicitation was pending, ICE received a question from a prospective offeror asking, "Arizona charges 4.5% 'business tax'; will the Federal Government issue a tax exemption certificate to the successful

_____

*    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

offeror?" *Id.* at 528. ICE responded, "Yes." *Id.* Given ICE's answer, Asset's initial proposal included an explanation of the cost estimates factored into its pricing, stating that "[s]ales taxes were not charged due to the government's expressed intent to provide Team Asset with a tax-exempt certificate, where applicable." *Id.* at 2022.

Ultimately, ICE selected Akima for the contract award because the government determined that it offered the best value. Asset filed a bid protest with the Government Accountability Office (GAO). Rather than proceed with the bid protest, ICE decided to take voluntary corrective action.

ICE then issued Amendment 17, which made several changes to the solicitation, and required offerors to supply ICE with specific pricing information in their proposals. Amendment 17 also changed the way that ICE was to analyze prospective offerors' pricing. Rather than evaluate proposals for price realism as well as reasonableness, ICE required offerors to submit a firm fixed price proposal and explained that it would "assess the reasonableness of the proposed prices" and "conduct its price analysis using one or more of the techniques specified in FAR 15.404-1(b)." *Id.* at 779. These techniques include the "[c]omparison of proposed prices received in response to the solicitation," 48 C.F.R. § 15.404-1(b)(2)(i), and the "[c]omparison of proposed prices to historical prices paid, whether by the Government or other than the Government, for the same or similar items," *id.* § 15.404-1(b)(2)(ii), among other techniques, *see id.* § 15.404-1(b)(2)(iii)–(vii) (outlining other price analysis techniques).[1] In other words, ICE would determine whether the prices were not unreasonably high

---

[1]    *See also* 48 C.F.R. § 15.404-1(b)(3) (explaining that "[t]he first two techniques at 15-404-1(b)(2) are the preferred techniques").

(reasonable) but would not determine whether they were unreasonably low (price realism). Asset submitted its updated proposal on May 30, 2019.

After discussions with offerors, ICE issued Solicitation Amendment 19 on May 31, 2019. In this Amendment, ICE corrected its earlier response to the tax-exempt status question. ICE clarified that it "CANNOT delegate its tax exempt status to contractors for the performance of government services." J.A. 1281. In light of this change, ICE instructed that offerors "review their price proposals and provide their best and final prices." *Id.*

Asset's Vice President for Contract Administration & Business Development, Ron Gates, responded to the Amendment the same day and stated that he had "reviewed, signed and attached Amendment 19 hereto. Asset's proposal does not require further revision." *Id.* at 1278. Asset did not remove the tax-exempt certificate language from its proposal despite receipt of this Amendment.

ICE again clarified the tax-exempt status question via Amendment 20, which issued on June 4, 2019, adding the word "no" to its response. *Id.* at 1285 ("*No*, the Government CANNOT delegate its tax exempt status to contractors for the performance of government services." (emphasis added)). In the amendment, the government again instructed that offerors "review their price proposals and provide their best and final prices." *Id.*

Mr. Gates again responded to the Amendment on behalf of Asset, stating that "Asset has reviewed it [sic] price proposal in response to Amendment 20. No changes are deemed necessary. I have attached a signed copy of Amendment 20 herewith." *Id.* at 1282. The tax-exempt certificate language remained in Asset's proposal.

Thereafter, ICE again selected Akima for the contract award. Asset again filed a protest with the GAO,

challenging ICE's evaluation of its proposal under the factors outlined in the solicitation and challenging ICE's best-value analysis. ICE again decided that it was best to take corrective action on its own by reevaluating the proposals and making a new source selection and requested that the GAO dismiss the protests, which the GAO did.

On reevaluation, ICE once again selected Akima for the contract award. The government utilized FAR 15.404-1(b)(2)(i) in its price analysis, comparing the prices proposed by the bidders. ICE concluded that Asset was ineligible to receive the contract award because Asset's proposal included the tax-exempt certificate language, rendering it a contingent price. In response, Asset filed another bid protest at the GAO, arguing that ICE improperly concluded that its bid contained contingency pricing and again disputing ICE's best-value analysis. This bid protest went forward. The GAO agreed that ICE improperly determined that Asset's bid contained contingency pricing but concluded that Asset "was not prejudiced by the agency's error," finding ICE's best-value analysis "to be reasonable," J.A. 1469, and denying Asset's protest.

Asset then filed a bid protest complaint at the Claims Court. The government and Akima (the successful bidder) argued that Asset lacked standing to bring the bid protest. The Claims Court "determined that Asset's price proposal . . . was non-responsive to the requirements of the Solicitation, as explicitly amended more than once, and, therefore, . . . Asset's price proposal was non-compl[ia]nt," making it ineligible for the contract award. J.A. 35. Because Asset submitted a non-responsive bid, the Claims Court held that Asset "lack[ed] standing to bring the . . . protest." *Id.* at 36.

Asset appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review standing determinations de novo and any underlying factual findings for clear error. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1357 (Fed. Cir. 2018).

The Claims Court, while an Article I court, "applies the same [constitutional] standing requirements enforced by other federal courts created under Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)). The standing issue in this case, however, is framed by 28 U.S.C. § 1491(b)(1), which provides the Claims Court's jurisdiction over bid protests.[2] We have explained that § 1491(b)(1) "imposes more stringent standing requirements than Article III." *Weeks Marine*, 575 F.3d at 1359.

Section 1491(b)(1) requires a protestor to make two showings to establish standing: "First, it must show that it is an 'interested party,'" which "requires the plaintiff to show that it is 'an actual or prospective bidder' and has a 'direct economic interest' in the procurement or proposed procurement." *CliniComp*, 904 F.3d at 1358 (quoting *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017)).

---

[2]    Section 1491(b)(1) grants the Claim's Court jurisdiction over

> an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or an alleged violation of statute or regulation in connection with a procurement of a proposed procurement.

28 U.S.C. § 1491(b)(1).

"Second, the plaintiff must show that it was prejudiced by a significant error in the procurement process," meaning that, *"but for the error*, it would have had a substantial chance of securing the contract." *CliniComp*, 904 F.3d at 1358 (emphasis in original) (first quoting *Diaz*, 853 F.3d at 1358; and then quoting *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009)).

We conclude that Asset did not have a substantial chance of winning the contract because its proposal was not responsive to the solicitation, making it ineligible for the contract award. Asset's bid included information that expressly contradicted the solicitation's material terms. Thus, Asset was without standing to challenge ICE's award of the contract to Akima.

Asset admits that its bid includes an error. ICE's solicitation required bidders to "[e]xplain in detail all pricing and estimating techniques." J.A. 779. Asset's description of its pricing, explaining that it was expecting the government to provide a tax-exempt certificate, was not consistent with the solicitation as amended. Asset essentially argues that this error was harmless. First, it argues that its bid price was unaffected by the error given that the solicitation, "through its firm fixed price requirement, established that an offeror's firm fixed price proposal made an offeror responsible for all costs of contract performance, irrespective of whether or not the offeror factored a specific cost into its calculation of its firm fixed price." Appellant's Br. 28. Asset points out that a firm fixed price contract places "maximum risk and full responsibility for all costs and resulting profit or loss" on the offeror. *Id.* at 26 (quoting 48 C.F.R. § 16.202-1; then citing *ITT Fed. Servs. Corp. v. Widnall*, 132 F.3d 1448, 1451 (Fed. Cir. 1997)). Second, Asset contends that its bid did not set a contingent price. Third, Asset argues that the solicitation did not require a price-realism analysis. On appeal, the government does not appear to dispute any of these three points. Instead, it

argues that "Asset's proposal was unacceptable on its face" and, as a result, could not have been selected and was ineligible for award of the contract. Appellee's Br. 9. Asset thus "lack[ed] standing to challenge the agency's decision to award the contract to Akima." *Id.*

Under our cases, "a proposal that fails to conform to the material terms and conditions of [a] solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." *Allied Tech. Grp. v. United States*, 649 F.3d 1320, 1329 (Fed. Cir. 2011) (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996)). The government argues that compliance with the amendments relating to the unavailability of a tax-exempt certificate constituted a material term of the solicitation because, absent compliance, there would be a significant ambiguity in the terms of any purported agreement. We agree. Given the mismatch between the terms of ICE's solicitation and Asset's bid, any agreement formed would fail to "satisfy the requirement of reasonable certainty applicable to the essential terms of all contracts." *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1355–56 (Fed. Cir. 2016); *see also United Pac. Ins. Co. v. Roche*, 401 F.3d 1362, 1366 (Fed. Cir. 2005) ("In the absence of . . . sufficiently definite terms, no contractual obligations arise." (quoting *Modern Sys. Tech. Corp. v. United States*, 979 F.2d 200, 202 (Fed. Cir. 1992))).

This ambiguity was significant. If ICE had selected Asset's bid, that would have created a risk of future litigation on the theory that the government knew of the error in Asset's bid and did not require its correction. "[I]n limited circumstances," "if the government has knowledge, or constructive knowledge, that a contractor's bid is based on a mistake, and the government accepts the bid and awards the contract despite knowledge of this mistake, then a trial court may reform or rescind the contract." *Giesler v. United*

*States*, 232 F.3d 864, 869 (Fed. Cir. 2000) (citing *United States v. Hamilton Enters., Inc.*, 711 F.2d 1038, 1046 (Fed. Cir. 1983)); *see also Hunt Constr. Grp. v. United States*, 281 F.3d 1369, 1376 (Fed. Cir. 2002) (explaining that, in certain circumstances, "[w]hen the government has notice of a mistake in a particular bid," "fairness and good faith dealing" prevents "the government from knowingly awarding a contract to a bidder whose bid contained a mistake of which the government was aware"). "Such relief may be appropriate to prevent the government from overreaching when it knows the contractor has made a significant mistake during the bidding process." *Giesler*, 232 F.3d at 869. The remedy, however, is not available for an "errant bid" caused by a bidder's "gross negligence in failing to read and consider the specifications thoroughly." *Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1157 (Fed. Cir. 1987).

Although such a claim of government liability in the circumstances of this case could not have succeeded because Asset could not plausibly claim that it misread the amended solicitation, the government has a substantial interest in not creating opportunities for litigation based on an erroneous bid and was not obligated to accept a bid that was contrary to the amended terms of its solicitation.

While ICE could have exercised its discretion to conduct another round of discussions with the prospective bidders to permit Asset to cure the error in its bid, ICE was under no obligation to do so. *See JWK Int'l Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002) ("[W]hether discussions should be conducted lies within the discretion of the contracting officer." (citing 48 C.F.R. § 15.306(d)(3))).

Thus, because of the error in Asset's bid, Asset was an ineligible bidder, did not have a substantial chance of winning the ICE contract, and was without standing to challenge ICE's award of the contract to Akima.

**AFFIRMED**