# United States Court of Appeals for the Federal Circuit

---

**CHICAGO COATING COMPANY, LLC, IGNACIO MARTINEZ, BENJAMIN MARTINEZ,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-2198

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00625-TCW, Judge Thomas C. Wheeler.

---

Decided: June 11, 2018

---

MICHAEL JAMES SMITH, Stewart, Wald & McCulley, LLC, St. Louis, MO, argued for plaintiffs-appellants. Also represented by STEVEN WALD.

EDWARD CARLOS THOMAS, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY H. WOOD, ERIKA KRANZ.

---

Before REYNA, CLEVENGER, and WALLACH, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

In this "rails-to-trails" case, Chicago Coating Company and Ignacio and Benjamin Martinez (collectively "Appellants") seek just compensation for an alleged Fifth Amendment taking of their reversionary interest in land within a dormant rail corridor. When faced with cross motions for summary judgment, the United States Court of Federal Claims ("the trial court") determined that the deeds between Appellants' predecessors-in-interest and the original railroad conveyed the property to the railroad in fee simple. Appellants, however, contend that the deeds conveyed only an easement, which terminated when the land was no longer used for railroad purposes. Thus, the Government's proposal to allow the corridor to be converted into a recreational trail allegedly constituted a taking of their reversionary interest in the easement. We disagree, and affirm the decision of the trial court.

## BACKGROUND

Congress granted the United States Surface and Transportation Board ("STB")[1] regulatory authority over rail carriers who intend to discontinue or abandon any part of their railroad line. 49 U.S.C. §§ 10501(b), 10903 (2015). A discontinuance allows a rail carrier to "cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service," while abandonment removes the line from the national rail

---

[1] The STB is an independent adjudicatory agency with broad regulatory authority over railroad rates, service disputes, mergers, and rail abandonment. 49 U.S.C. § 10501(b). It succeeded the Interstate Commerce Commission, which Congress dissolved in 1996. ICC Termination Act of 1995, Pub. L. No. 104-88 § 101, 109 Stat. 803, 804 (1995).

system and terminates the railroad's common carrier obligation for the line. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5 n.3 (1990) (*Preseault I*).[2] Originally, if a railroad requested to abandon a line, the STB could either consummate the abandonment within one year of the request, 49 C.F.R. § 1152.29(e)(2) (2016), or exempt the line from formal abandonment proceedings under 49 U.S.C. § 10903, and provide an expedited review process, 49 U.S.C. § 10502(a) (2015); 49 C.F.R. § 1152.50 (2016).

But in 1983, Congress enacted Amendments to the National Trails System Act of 1968, which created an alternative process to abandonment, called "railbanking." 16 U.S.C. § 1241 *et seq.* (2006) ("Trails Act"). Railbanking maintains the STB's jurisdiction over the dormant corridor, but allows a third party to assume the financial and managerial responsibilities of the right-of-way, preserve the right-of-way for future rail use, and, in the interim, convert the corridor into a recreational trail. *Preseault I*, 494 U.S. at 6–7.

In order to railbank a corridor, the railroad must first initiate abandonment proceedings before the STB.

---

[2]    References to the *Preseault* line of cases have used a variety of numbering conventions. *Compare Preseault v. United States*, 100 F.3d 1525, 1530 (Fed. Cir. 1996) (en banc) (referring to the Second Circuit decision in *Preseault v. ICC,* 853 F.2d 145 (2d Cir. 1988) as "*Preseault I*" and the Supreme Court decision on certiorari, 494 U.S. 1 (1990), as "*Preseault II*"), *with Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1372 (Fed. Cir. 2009) (referring to the Supreme Court decision, 494 U.S. 1, as "*Preseault I*" and this court's opinion, 100 F.3d 1525, as "*Preseault II*"). We employ the numerical convention of *Ellamae Phillips*.

49 C.F.R. §§ 1152.29, 1152.50.  The party interested in acquiring the corridor must then request that the STB issue a Certificate of Interim Trail Use ("CITU") or a Notice of Interim Trail Use ("NITU"),[3] 49 C.F.R. § 1152.29(c)–(d), which will issue if the railroad is willing to negotiate an agreement, *Preseault I*, 494 U.S. at 7 n.5. If an agreement is reached, the STB suspends the abandonment proceedings, which "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d) (2014).  Railbanking thus prevents any state law reversionary interests in the corridor from vesting.  If an agreement is not reached, the abandonment proceedings may continue.        49 C.F.R. § 1152.29(d)(1).

Following the enactment of the amended Trails Act, property owners who believed they had a reversionary interest in property lying in dormant rail corridors began claiming that railbanking constituted a taking of their property.  In *Preseault I*, the Supreme Court recognized that the process of railbanking could constitute a taking, 494 U.S. at 12–17, and this court subsequently held that the establishment of a recreational trail to preclude the reversion of an easement may also be a taking, *Preseault v. United States*, 100 F.3d 1525, 1550 (Fed. Cir. 1996) (en banc) (*Preseault II*).  Thus, in these rails-to-trails takings cases, the threshold question is whether the claimant has a compensable property interest in the land allegedly taken, which is often answered by analyzing the original deeds that conveyed the property to the railroad.  *Preseault I*, 494 U.S. at 16; *Preseault II*, 100 F.3d at 1533.

---

[3]    The STB will issue a CITU as part of regular abandonment proceedings, and an NITU as part of exemption proceedings.  49 C.F.R. § 1152.29(c)–(d).

This case involves two segments of land that are part of a rail corridor in Cook County, Illinois, now operated by Burlington Northern Santa Fe Railway ("BNSF"). On December 21, 2012, BNSF initiated proceedings before the STB to abandon the corridor. On January 29, 2013, the Chicago Department of Transportation filed a petition with the STB indicating its interest in negotiating a railbanking and interim trail use agreement for the corridor. When BNSF did not object, the STB issued an NITU on April 9, 2013. The STB gave BNSF until April 9, 2014, to negotiate an agreement, after which the corridor would be abandoned. However, after numerous extensions, BNSF has neither reached a railbanking agreement nor abandoned the corridor. The opportunity for negotiation continues. Decision of the U.S. Surface Transp. Bd., Docket No. AB-6-428-X (Mar. 6, 2018) (extending the STB's decision and NITU until August 28, 2018).

On July 18, 2014, Appellants filed a takings claim in the trial court, alleging that they are the fee owners of certain parcels of land within the corridor and that the STB's issuance of the NITU constituted a Fifth Amendment taking of their interest in that land.[4] As evidence of ownership, Appellant Chicago Coating Company, as the successor-in-interest, provided a deed from Daniel and Harriet Jones, dated April 22, 1878 ("the Jones Deed"). The deed states, in part:

---

[4] Our rails-to-trails takings precedent holds that the issuance of an NITU is the only governmental action that operates to prevent abandonment of the corridor and preclude the vesting of state law reversionary interests in the property. The NITU thus triggers an arguable taking, and in instances where no trail use agreement is reached, a temporary taking may have occurred. *See Ladd v. United States*, 630 F.3d 1015, 1020 (Fed. Cir. 2010).

The Grantors . . . for and in consideration of Ten Dollars in hand paid, convey and quit claim to [the Grantees] all interest in the following described Real Estate to wit: The right of way for rail road purposes over and across a strip of land fifty (50) feet in width being twenty five (25) feet on each side of the centre line of the track of the railroad known as the "Chicago and Southern Railroad" as the same is now located and built through over and across [the described land] . . . .

. . .

But this grant is upon the express condition [that the Grantee] shall cause such premises to be used by some regularly incorporated Railroad Company [as part of a railway operation] and whenever a breach of any or either of these conditions shall appear . . . [the Grantor] shall have the right to reenter said premises and to own, use, occupy and enjoy the same as if the grant first above mentioned had never been made. And the said Grantor hereby expressly waive[s] and release[s] any and all rights under and by virtue of any and all laws of said State of Illinois in relation to the exemption of homestead.

Appellants Ignacio and Benjamin Martinez, as the successors-in-interest, provided a deed from John and Marjory Edward Wilkins, dated April 1, 1875 ("the Wilkins Deed"). The deed states, in part:

[The Grantor] in consideration of the construction of a railroad across the premises hereinafter described and of a permanent railroad station . . . [the Grantor] hath granted sold and conveyed and by these presents do grant bargain sell convey and warrant to the [Grantee], that certain strip or parcel of land situate in the city of Chicago in the County of Cook and state of Illinois to wit: a strip

of land running forty feet in width and running diagonally across [the land] so long as said party of the [Grantee] shall use the said strip of land for the purpose of a railroad, and shall maintain and use a station at the point of intersecting of Kedzie Avenue and Swift streets and no longer.

. . .

It is also understood that if [the Grantee] shall ever abandon or cease to use said strip of land for the purpose of a railroad or omit to carry out any of the agreements or perform any of the conditions here made and to be performed, then and in such case his conveyance shall be null and void, and the [Grantees] hereby agree thereupon to reconvey by a good and sufficient warranty deed to [the Grantor] the premises above described.

Both the Appellants and the Government filed cross motions for summary judgment, disputing whether each deed conveyed the respective properties in fee simple or granted a mere easement, and whether a taking had occurred.

The trial court concluded that the plain language of each deed conveyed the respective properties in fee simple. The trial court began its analysis of the Jones Deed by noting that it used the statutory form for quitclaim deeds, thereby creating a statutory presumption of a fee simple conveyance. *Chi. Coating Co., LLC v. United States*, 131 Fed. Cl. 503, 510 (2017). While Appellants asserted that the object of the statutory granting clause is a "right of way," the trial court concluded that such a reading omits the fact that the granting clause conveyed "all interest" in the property. *Id.* The trial court dismissed other easement-indicating language, such as "for railroad purposes" and "over and across," as merely explaining the reasons for the conveyance, rather than limiting the conveyance. *Id.* at 511–12 (likening the

language of the deed to that in *Barlow v. United States*, 123 Fed. Cl. 186 (2015)). The trial court also cited to the reversionary interest—the "right to reenter"—and homestead exemption as further evidence that the parties intended a fee simple conveyance. *Id.* at 512.

As for the Wilkins Deed, the trial court noted that the deed used the statutory form for warranty deeds, thereby creating the statutory presumption of a fee simple conveyance. *Id.* at 513. This presumption was validated by the deed's reference to "a strip of land" in both the granting clause and description, without any reference to a "right of way," and the fact that the reversionary interest explicitly requires the land to be re-conveyed back to the Grantor by warranty deed. *Id.* at 513–14. The trial court dismissed the easement-indicating language—"for the purpose of the railroad"—as a mere description of the parties' motivation, which in no way limited the conveyance. *Id.* at 514.

The trial court thus concluded that the Government did not commit a compensable taking under the Fifth Amendment when the STB issued the NITU, because Appellants did not possess a cognizable property interest in the land. *Id.*

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

We review the trial court's grant of summary judgment *de novo*, *Nw. Title Agency, Inc. v. United States*, 855 F.3d 1344, 1347 (Fed. Cir. 2017) (citing *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1336 (Fed. Cir. 2006)), applying the same standard as the trial court, *Palahnuk v. United States*, 475 F.3d 1380, 1382 (Fed. Cir. 2007).

"Whether a taking has occurred is a question of law based on factual underpinnings. We conduct a plenary

review of the legal conclusions of the Court of Federal Claims while reviewing its factual conclusions for clear error." *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed. Cir. 2005) (internal citations omitted). However, summary judgment is appropriate only when there is no genuine issue of material fact, *Castle v. United States*, 301 F.3d 1328, 1336 (Fed. Cir. 2002), and all factual inferences should be viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

I

The Fifth Amendment prohibits the taking of "private property . . . for public use, without just compensation." U.S. Const. amend. V, cl. 4. In order to prove a compensable taking based on the issuance of a NITU, a claimant must prove that "state law reversionary interests [in the property at issue] are effectively eliminated in connection with a conversion of a railroad right-of-way to trail use." *Caldwell v. United States*, 391 F.3d 1226, 1228 (Fed. Cir. 2004).

In *Ellamae Phillips Co. v. United States*, we set forth a three-part test to determine whether a claimant is entitled to compensation in these types of rails-to-trails cases. 564 F.3d 1367, 1373 (Fed. Cir. 2009). First, the claimant must have an ownership interest in the land at issue. *Id.* If the railroad company owns the land in fee simple, then the Government cannot have committed a taking and the analysis ends. *Preseault II*, 100 F.3d at 1533. Second, if the railroad possesses only an easement, the claimant must show that the trail use falls outside the scope of the easement. *Ellamae Phillips*, 564 F.3d at 1373. Finally, even if the easement permits using the land as a recreational trail, claimants may recover if the easement terminated or was abandoned prior to the alleged taking. *Id.*

Appellants did not contend that the easement had been abandoned prior to the alleged taking in their motion for summary judgment. *Chi. Coating*, 131 Fed. Cl. at 509. Thus, we must answer the threshold question of whether the Jones and Wilkins Deeds conveyed the parcels of land at issue in fee simple, or merely granted an easement to the railroad.

To answer that question, we must apply the law of the state where the property interest arises. *See Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ."); *see also Preseault II*, 100 F.3d at 1536 (reviewing the disputed deeds under applicable state law). In Illinois, "[t]he cardinal and all-important [rule] is to ascertain the intention of the parties," as gathered from the entire instrument, *Tallman v. E. Ill. & Peoria R. Co.*, 41 N.E.2d 537, 539 (Ill. 1942), considering "the facts [the parties] had in mind, including their situation, the state of the property, and the objects to be attained," *Magnolia Petroleum Co. v. West*, 30 N.E.2d 24, 26 (Ill. 1940) (citing *Waller v. Hildebrecht*, 128 N.E. 807, 809 (Ill. 1920); *Goodwillie Co. v. Commonwealth Elec. Co.*, 89 N.E. 272 (Ill. 1909)).

A

Turning first to the Jones Deed, the granting clause states: "The Grantors . . . convey and quit claim to [the Grantees] all interest in the following described Real Estate to wit . . . ." The clause utilizes the statutory form for quitclaim deeds,[5] thereby creating a rebuttable pre-

---

[5]   The statutory quitclaim deed reads:

The grantor [here insert grantor's name or names and place of residence], for the consideration of

sumption of a fee simple conveyance. *See* 1872 Ill. Laws 285, § 10 (providing statutory quit claim language and stating that "[e]very deed in substance in the form prescribed in this section . . . shall be deemed and held a good and sufficient conveyance . . . in fee . . . ."); 1872 Ill. Laws 286, § 13 ("Every estate in lands which is granted, conveyed or bequeathed . . . shall be deemed a fee simple estate of inheritance, if a less estate is not limited by express words, or do not appear to have been granted, conveyed or bequeathed by construction or operation of law."); *Sowers v. Ill. Cent. Gulf R. Co.*, 503 N.E.2d 1082, 1085 (Ill. App. Ct. 1987) ("[U]se of the granting language 'conveyed' results in a presumption under [§] 13 that a fee simple estate was intended absent limitation to a lesser estate by express words or construction of law."); *Tallman*, 41 N.E.2d at 539 ("[I]f language contained in an instrument has a well-known meaning and significance in the law, it will be presumed such meaning was in the minds of the parties using it, unless a contrary intent is made manifest by other language in the deed."). With the presumption of a fee simple conveyance in mind, we must then look to the remainder of the deed to determine whether it is clear that the parties intended to convey a lesser estate.

As evidence that the parties intended to convey a lesser estate, Appellants point to three phrases in the deed's description—(1) "the right of way," (2) "for railroad purposes," and (3) "over and across"—immediately follow-

---

[here insert consideration], convey and quit claim to [here insert grantee's name or names] all interest in the following described real estate [here insert description], situate in the county of . . . , in the state of Illinois. Dated this . . . day of . . . , A.D. 18 . .

1872 Ill. Laws 285, § 10.

ing the granting clause. While these phrases have historically been relied upon to find that a deed conveyed an easement, their use alone is not dispositive.

For instance, in *Tallman*, a deed titled "Right of Way Deed," for purposes of the railroad's "right of way" "across and upon" certain described real estate granted only an easement, even though the deed was in statutory form. 41 N.E.2d at 539. The court reasoned that "to hold a fee simple of all interest . . . would be to give no effect whatever to the words 'right of way,' but to hold the conveyance is an easement is compatible with the language of the deed . . . ." *Id.* at 543. Likewise, in *McVey v. Unknown Shareholders of Inland Coal and Washing Co.*, a deed titled "Deed for Right-of-Way," which conveyed an interest "over and through the following tract . . . for the purposes of constructing [a railroad]" was found to also grant a mere easement. 427 N.E.2d 215, 217 (Ill. App. Ct. 1981).

On the other hand, in *Urbaitis v. Commonwealth Edison*, a deed that only once referenced a "right-of-way" in the conditions clause did not overcome the statutory presumption of a fee simple conveyance. 575 N.E.2d 548, 552 (Ill. 1991). Likewise, in *Penn Central Corp. v. Commonwealth Edison Co.*, the court found "that the use of the words 'over', 'across', and 'through' is merely descriptive of the estate conveyed and does not constitute a limitation on the use of the land." 512 N.E.2d 118, 120 (Ill. App. Ct. 1987). And in *Keen v. Cleveland, Cincinnati, Chicago & Saint Louis Railway Co.*, a deed which described land "'for so much of the [railroad] as may pass through the following described land,' refer[red], not to the estate conveyed, but to the location and description of the land." 64 N.E.2d 499, 504 (Ill. 1945). These cases all point to a single conclusion: the use of particular language, when viewed in isolation, does not dictate the type of interest being conveyed. Instead, the language is used

to illuminate the intentions of the parties as to the true nature of the conveyance.

In this case, Appellants argue that the object of the granting clause was the "right of way," which clearly evinces the parties' intent to grant an easement. *See* Jones Deed (conveying and quitclaiming "all interest in the following described Real Estate to wit: The right of way . . . ."). "However, there is no *per se* rule that the mere inclusion of the term 'right-of-way' in any deed to a railroad negates the possibility that title in fee simple was conveyed." *Urbaitis*, 575 N.E.2d at 553. The trial court took this position as well, concluding that "all interest" was the object of the conveyance, and that "'[r]ight of way' merely describes the Real Estate for which all interest is being conveyed." *Chi. Coating*, 131 Fed. Cl. at 510. While we ultimately agree that "right of way" describes the real estate being conveyed, the trial court's position does not account for the fact that the phrase "all interest" is part of the statutory quitclaim language. 1872 Ill. Laws 285, § 10. Therefore, "all interest" should not be relied upon to validate the presumption of a fee simple conveyance that the statutory language itself creates.

Instead, looking to the entirety of the description, it becomes clear that the phrase "[t]he right of way for rail road purposes over and across a strip of land" is not intended to limit the conveyance of the parcel, but to describe the right of way the existing rail line already possessed. *See* Jones Deed (describing the dimensions of the parcel "on each side of the centre line of the track of the railroad known as the 'Chicago and Southern Railroad' as the same is now located and built through" the parcel being conveyed).

The Jones Deed may be likened to that of *Sowers*, in which the court was faced with similarly descriptive language. The deed in *Sowers* "convey[ed] and warrant[ed] . . . the following described Real Estate, to-wit:

Thirty-three (33) feet in width over and across [an area of land] being the right of way, as now occupied by said Railway Company." 503 N.E.2d at 1084 (emphasis omitted). There, the court found "that while this language showed an intent to locate a railroad on the strip of land conveyed, the language in no way limited the use of this land to railroad purposes." *Id.* at 1086. Instead, the language "served merely to locate the land on which the railroad would be constructed and 'expresse[d] no intention to limit the estate conveyed to less than an estate in fee simple.'" *Id.* (alteration in original) (quoting *Keen*, 64 N.E.2d at 504).

While Appellants would have us liken this case to *Magnolia Petroleum*, that case is a relative outlier, and relied heavily upon extrinsic evidence. In that case, the deed was in statutory form and conveyed "the following described real estate, towit [sic]: [a description of the bounds of the grant] to be used for road purpose." *Magnolia*, 30 N.E.2d at 25. The court concluded that the phrase "to be used for road purposes" in the description "disclose[d] an intention to grant merely a right of way, and the words 'convey and warrant' are as compatible with this intention as with the conveyance of a fee." *Id.* at 27. But to reach this conclusion, the court noted the purpose language was ambiguous, and therefore looked to surrounding circumstances—the location of the parcel, its lack of road access, the position of the strip, and the Grantee's subsequent use—to support its finding. *Id.* Here, Appellants have not proffered any such extrinsic evidence.

While the Government argues that the Jones Deed's condition subsequent—that the Grantor reserves the "right to reenter . . . to own, occupy and enjoy the same as if the grant . . . had never been made"—evinces a fee simple conveyance, we do not agree that this reversionary interest necessarily weighs in the Government's favor. Such rights of reentry are equally applicable to easements

under Illinois law.  *See Diaz v. Home Fed. Sav. & Loan Ass'n of Elgin*, 786 N.E.2d 1033, 1042 (Ill. App. Ct. 2002) ("While possibilities of reverter often follow a fee interest, they may follow other interests as well.  Easements may be held subject to future interests such as possibilities of reverter and rights of reentry; hence, ascribing the intent to create such an interest runs afoul of no rule of law." (internal citations omitted)).

Finally, we note that the Jones Deed includes a waiver to the homestead exemptions.  *See* Jones Deed ("[The Grantors] expressly waive and release any and all rights under and by virtue of . . . the Exemptions of homesteads.").  The homestead exemptions arose as a means of protecting one spouse, at the time a wife, from being alienated from her land by the other spouse without her consent.  1857 Ill. Laws 119; *Warner v. Crosby*, 89 Ill. 320, 323 (1878).  Unlike rights of re-entry, the homestead exemptions generally apply only to fee simple conveyances, not easements.  *See Trickey v. Schlader*, 52 Ill. 78, 80 (1869) ("As this road was only an easement, and did not dispose of the fee, the question of a homestead right in the land by the surviving widow can not arise."); *see also Urbaitis*, 575 N.E.2d at 551 (determining that deeds containing waivers to the homestead exemptions conveyed a fee simple); *Sowers*, 503 N.E.2d at 165–66, 169, 173 (similar).  *But see Tallman*, 379 N.E.2d at 539, 543 (determining that a deed conveyed a right of way easement, despite the fact that the deed included a waiver to the homestead exemptions).  While not dispositive, the inclusion of the waiver of the homestead exemption indicates intent to convey a fee simple.

While certain language from the Jones Deed may weigh slightly in Appellants favor, we conclude that the use of the statutory form and the inclusion of the waiver of the homestead exemption weigh heavily in the Government's favor.  Therefore, considering the instrument as a whole, *see Urbaitis*, 575 N.E.2d at 552, we agree with

the trial court that the Jones Deed conveyed the parcel in fee simple.

## B

Turning to the Wilkins Deed, the granting clause states: "[The Grantors] in consideration of the construction of a railroad across the premises hereinafter described . . . do grant bargain sell convey and warrant to the [Grantee], that certain strip or parcel of land . . . ." The clause utilizes the statutory form for warranty deeds,[6] thereby creating a statutory presumption of a fee simple conveyance. *See* 1872 Ill. Laws 284, § 9 (providing statutory warranty deed language and stating that "[e]very deed in substance in the above form . . . shall be deemed and held a conveyance in fee simple . . . ."); 1872 Ill. Laws 286, § 13; *Sowers*, 503 N.E.2d at 1085. With the presumption of a fee simple conveyance in mind, we must then look to the remainder of the deed to determine whether the parties instead intended to convey a lesser estate.

Unlike the deeds in *Tallman* and *McVey*, which both explicitly referred to a "right of way" in the title and throughout and made specific reference to how the land would be used, the Wilkins Deed's granting clause is

---

[6]   The statutory warranty deed reads:

The grantor [here insert name or names and place of residence], for and in consideration of [here insert consideration] in hand paid, conveys and warrants to [here insert the grantee's name or names] the following described real estate [here insert description], situated in the county of . . . , in the state of Illinois.  Dated this . . . day of . . . , A.D. 18 . .

1872 Ill. Laws 284, § 9.

devoid of any easement-indicating language. In fact, it refers to a "strip of land" both in the granting clause and immediately thereafter in the description, making the "strip of land" the unambiguous object of the conveyance. *See McVey*, 427 N.E.2d at 217 ("[When a] deed to the railroad conveys a definite strip or parcel of land with no language in the deed relating to the use or purpose of the grant or no language limiting the estate conveyed, the deed will be construed to convey a fee simple title."); *see also Sowers*, 503 N.E.2d at 1085–86 (addressing *McVey* before concluding "that while [purpose] language showed an intent to locate a railroad on the strip of land conveyed, the language in no way limited the use of this land to railroad purposes").

Appellants would have us liken the Wilkins Deed to that in *Magnolia* based on the existence of the phrase "for the purpose of a railroad" in the description. *See* Wilkins Deed (conveying "a strip of land . . . so long as said party of the [Grantee] shall use the said strip of land for the purpose of a railroad"). But, as discussed previously, *Magnolia* relied heavily on extrinsic evidence. 30 N.E.2d at 27. Unlike *Magnolia*, there is no ambiguity in the Wilkins Deed to warrant an examination of extrinsic evidence. *See Urbaitis*, 575 N.E.2d at 552 ("Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors."). But even if there were ambiguity, Appellants have not proffered any extrinsic evidence supporting their position.

Instead, the Wilkins deed may be better likened to that in *Urbaitis*, which used the statutory form for warranty deeds and made "a strip of land" the object of the conveyance. *See* 575 N.E.2d at 551 (The Grantor "conveys and warrants" to the Grantee "the following described real estate, to-wit: A piece or parcel of a tract of land . . . ."). Like *Urbaitis*, the subsequent purpose language in the description does nothing to limit the convey-

ance of "a strip of land" but merely describes the motivations of the parties.

Our position that the Wilkins Deed conveyed the property in fee simple is further supported by the inclusion of the reversionary interest. Where the Jones Deed included a "right to reenter," the Wilkins Deed explicitly requires that the Grantee "reconvey by a good and sufficient warranty deed to [the Grantor] the premises above described." Such a re-conveyance would be entirely unnecessary if the original instrument granted a mere easement. For these reasons, we agree with the trial court that the Wilkins Deed conveyed the parcel of land in fee simple.

## CONCLUSION

With both the Jones and Wilkins Deeds conveying title to their respective parcels of land in fee simple, Appellants have failed to allege a cognizable property interest on which they can recover just compensation. For these reasons, the Government did not commit a compensable taking under the Fifth Amendment, and we affirm the final judgment of the trial court.

## **AFFIRMED**

### COSTS

No costs.