NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARY E. ALBRIGHT, ET AL.,**
*Plaintiffs-Appellants*

**CLAUDE J. ALLBRITTON, ET AL.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

--------------------------------------------

**PERRY LOVERIDGE, ET AL.,**
*Plaintiffs*

**NEAL ABRAHAMSON, ET AL.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

--------------------------------------------

**GARY E. ALBRIGHT, ET AL.,**
*Plaintiffs*

**DANIEL EARL HIGGINS, III, MICHAEL J. OPOKA,**

**ZELDA L. OPOKA,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

————————————

2019-2078, 2019-2080, 2019-2090, 2019-2316

————————————

Appeals from the United States Court of Federal Claims in Nos. 1:16-cv-00912-NBF, 1:16-cv-01565-NBF, 1:18-cv-00375-NBF, Senior Judge Nancy B. Firestone.

————————————

Decided:  December 1, 2020

————————————

THOMAS SCOTT STEWART, Stewart Wald & McCulley, LLC, Kansas City, MO, argued for all plaintiffs-appellants. Plaintiffs-appellants Neal Abrahamson, Randy Anderson, Judy Anderson, Braukman Loving Trust, Hannelore Drugg, James Haley, Deslee Kahrs, Donna Kahrs, Won Wha Kim, Jeong Ho Kim, Terry Kline, Debbie Kline, Mascott, LLC, Terry S. McCamman, Cheryl A. McCamman, Sharon Newman, Cheryl D. Runnels Trust, Barbara L. Thompson Revocable Living Trust, William E. Waibel Living Trust and Pamela A. Waibel Living Trust, Diane Walters, Richard Young, Advance Resorts of America, Inc., William Appleton, Jacqueline Appleton, Berrie Beach, LLC, Maureen Berrie-Lawson, Angelina Best, Brecht Family Trust, Neil Brown, Randall S. Burbach Trust, Douglas Burrows, Chastain Family Limited Partnership, Gary L. Dowen, Mary E. Dowen, Scott Ford, Rosalie Gehlen, Lenhart A. Gienger Trust, Rick Hass, Barbara Hass, Cheri Heath-Rickert, James Henriksen, David Hirschfield,

Roberta J. Hoffard Revocable Living Trust, Claudia Jameson, Darleen Johnson, Betsy A. King Revocable Trust, William Neuman, Ruffo Family Revocable Living Trust, Patricia Shotwell, Kevin Thomas, Carol Thomas, Shirley M. Thomas Revocable Living Trust, Zapp Family Revocable Living Trust, Paul D. Ancheta, Donald Aten, Linda Aten, Brummund Family Revocable Living Trust, David William Bruneau Trust, Kim Kristina Bruneau Trust, Daniel Stokes, Judith Stokes, Franklin Byrnes, Alice Yetka, Mark Escriva, Maryann Escriva, Falconer Family Trust, Farmington Hubbard Adams Enterprises, LLC, Eileen George, Martha Lynn Trost Gray, James Harper, Georgia Gettman, Stephan Jones, Teresa Jones, Ronald Koch, Julie Koch, LOLA OTT IV, LLC, Ebben McCarty, James McDonald, Sally McDonald, Synthia McIver, Zhiming Mei, Oregon Conference of the Methodist Church, Oregon-Idaho Annual Conference of the United Methodist Church, Oregon Writers Colony, Inc., Ardyce K. Osborn Revocable Living Trust, Rockaway Sandwood Ltd., Michael Sabin, Jerry Schlegel, Van's Camp LLC, Fred Wale, Andrea Lynn Wallace, Mary Judith Upright Living Trust also represented by ELIZABETH MCCULLEY; MICHAEL JAMES SMITH, STEVEN WALD, St. Louis, MO.

JAMES H. HULME, Arent Fox LLP, Washington, DC, for plaintiffs-appellants Edward J. Bates, Judith A. Bates, Todd A. Bridge, Rebecca A. Bridge, Sherry D. Crocker, Howard N. Dietrich, Sr., Bradley C. Donohue, Erickson Realty, Ltd., Joseph A. Evers, Beverly J. Evers, Evers Family Farms, Inc., Roderick Michael Gordon Living Trust, Daniel Earl Higgins, III, Jason Hitz, Christy Hitz, Mark Beer, Carol Beer, JC Purinton Group, LLC, Dmitri Kosten, Kurt Langeberg, Linda Langeberg, Lardner Family Revocable Trust, M& GT Land Management LLC, James E. McConnell, Rita J. McConnell, Michael J. Opoka, Zelda L. Opoka, Lyal T. Purinton, Sandra K. Purinton, Barbara Reimers Family Trust, Schwietert Enterprises II, LLC, Brady A. Smith, Patrick Toews, Dominique Toews, Upper

Crust Real Estate, LLC, Eric P. Williams, Karen J. Williams, Charles Winders, James P. Calpin Trust, Carla C. Albright, Gary E. Albright. Also represented by DONALD B. MITCHELL, JR.

MEGHAN S. LARGENT, LewisRice, St. Louis, MO, for plaintiffs-appellants Carole J. Bellisario, Martha Bush, George W. DeGeer, Tracy J. Keegan, David L. Hubbell, Gregory K. Hulbert Trust, Jamieson Land and Timber, LLC, Gail M. Kessinger, James A. Kliewer, Susan M. Kliewer, Little Family Trust, James C. Miller, Diane Foeller Miller, Daniel Mathias Foeller, Thomas Charles Foeller, Thomas J. Rinck and Sandra Gift Trust, Switzer Family Trust, Steven Michael Van Doren, Linda Ann Van Doren, Willa Worley, Richard John Vidler, Jr., Arlene Frances Wolever Trust. Also represented by LINDSAY BRINTON.

ANNA KATSELAS, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JEFFREY B. CLARK, ERIC GRANT.

MARK F. HEARNE, II, True North Law Group, LLC, St. Louis, MO, for amicus curiae National Association of Reversionary Property Owners. Also represented by STEPHEN S. DAVIS.

---

Before PROST, *Chief Judge*, LINN and TARANTO, *Circuit Judges*.

PROST, *Chief Judge*.

These consolidated appeals stem from a "rails-to-trails" conversion in Oregon. The Court of Federal Claims determined that the twenty-six deeds at issue each conveyed fee simple title, not an easement, from Appellants'

predecessors-in-interest to the railroad.[1]  *See generally Loveridge v. United States*, No. 16-912L, 2019 WL 495578 (Fed. Cl. Feb. 8, 2019) ("*Reconsideration*"); *Loveridge v. United States*, 139 Fed. Cl. 122 (2018) ("*Decision*").  For that reason, the Court of Federal Claims concluded that Appellants have no compensable property interest in the land to which the deeds pertain.  Appellants appealed.  We affirm.

I

The United States Surface and Transportation Board ("STB") has regulatory authority over rail carriers who wish to discontinue or abandon any part of their railroad line.  49 U.S.C. §§ 10501(b), 10903.  Discontinuance "allows a railroad to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future."  *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 4 n.3 (1990) ("*Preseault I*").  Abandonment "removes the line from the national rail system and

---

[1]    Like the parties, we identify the deeds by the grantor's name or, if the grantor executed more than one deed, by both the grantor's name and the book and leading page number.  The deeds at issue on appeal are Beals 18/40 (J.A. 20, 1219); Bryden (J.A. 24, 1234); Burgholzer 83/99 (J.A. 26, 1238); Cummings (J.A. 35, 1263); DuBois 24/40 (J.A. 41, 1281); Friday (J.A. 44, 1296); Galvani (J.A. 45, 1300); Gattrell (J.A. 46, 1302); Goodwin (J.A. 50, 1310); Hagen (J.A. 51, 1312); Jeffries (J.A. 63, 1357); Rinck (J.A. 88, 1438); Rupp (J.A. 92, 1446); Slattery (J.A. 96, 1462); Smith (J.A. 97, 4871); Stowell (J.A. 100, 1473); Thayer 11/355 (J.A. 103, 1478); Watt 12/343 (J.A. 112, 1478); Watt 12/344 (J.A. 113, 1502); Watt 12/345 (J.A. 114, 1504); Westinghouse 85/39 (J.A. 117, 1504); Wheeler Lumber 16/3 (J.A. 119, 2133); Wheeler Lumber 16/5 (J.A. 120, 4773); Wilson 75/244 (J.A. 122, 1524); Woodbury 16/481 (J.A. 123, 4864); and Woodbury 23/399 (J.A. 124, 4829).

terminates the railroad's common carrier obligation for the line." *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1166 (Fed. Cir. 2018). A railroad seeking to abandon any part of its railroad line must either file a standard abandonment application under 49 U.S.C. § 10903 or seek an exemption under 49 U.S.C. § 10502. *See Caldwell v. United States*, 391 F.3d 1226, 1228 & n.3 (Fed. Cir. 2004).

A provision of the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, sec. 208(1), 97 Stat. 42, 48 (codified as amended at 16 U.S.C. § 1247(d)), provides an alternative to abandonment called "railbanking," which preserves the possibility of future use of the land for railroad purposes but permits a trail sponsor to both take responsibility for the land and convert it in the interim to a recreational trail. *Preseault I*, 494 U.S. at 6–7; *Chi. Coating*, 892 F.3d at 1167. To initiate this process, a prospective trail sponsor must first notify the STB of its interest to repurpose the land to interim trail use. *Preseault I*, 494 U.S. at 7 n.5; *Chi. Coating*, 892 F.3d at 1167 & n.3. If the railroad agrees to negotiate an interim trail use/railbanking agreement with the prospective trail sponsor, the STB issues a Certificate of Interim Trail Use ("CITU") or, in the case of exemption proceedings, a Notice of Interim Trail Use ("NITU"). *See* 49 C.F.R. § 1152.29(c)–(d); *Caquelin v. United States*, 959 F.3d 1360, 1363 (Fed. Cir. 2020); *Chi. Coating*, 892 F.3d at 1167. The CITU or NITU provides the parties with a period of time to negotiate a trail use agreement. *See* 49 C.F.R. § 1152.29. If the parties reach an agreement, upon notifying the STB, the corridor is railbanked, and the trail sponsor may convert the rail segment to a trail. *See Preseault I*, 494 U.S. at 7.

Turning now to this case, on May 26, 2016, the Port of Tillamook Bay Railroad ("POTB") filed an exemption notice with the STB to abandon the portion of its rail line located between milepost 775.1 (near Banks, Oregon) and milepost 856.08 (near Tillamook, Oregon). On June 7, 2016, the Salmonberry Trail Intergovernmental Agency ("STIA")

asked the STB to issue a NITU for the segment. The STB issued the NITU on July 26, 2016, after POTB expressed its willingness to negotiate with STIA for interim trail use and railbanking. STIA and POTB ultimately reached an interim trail use agreement and notified the STB of the agreement on October 23, 2017.

Shortly after the NITU issued, Plaintiffs-Appellants filed the underlying action in the Court of Federal Claims, alleging that the conversion of the land to interim trail use amounted to a Fifth Amendment taking. One hundred thirty-two deeds were initially at issue in the case. Twenty-six deeds remain at issue in this appeal. Appellants contend that "their predecessors-in-interest granted only easements to the railroad which terminated when the railroad became dormant" and, as a result, "conversion of the rail corridor gave rise to a" compensable Fifth Amendment taking. *See Decision*, 139 Fed. Cl. at 127. In response, the government argued that there was no compensable taking because the deeds at issue "conveyed the property within the rail corridor to the railroads in fee simple absolute." *Id.* The Court of Federal Claims agreed with the government, concluding on partial summary judgment that the twenty-six deeds at issue conveyed fee simple title to the railroad and that, therefore, no Fifth Amendment taking occurred.

Appellants appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review de novo the decision of the Court of Federal Claims on summary judgment. *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003); *see also Chi. Coating*, 892 F.3d at 1169. "Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Arko Exec. Servs., Inc. v. United States*, 553 F.3d 1375, 1378 (Fed. Cir. 2009) (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); *see also* R. Ct. Fed. Cl. 56(a).

The Fifth Amendment of the Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V, cl. 4. Here, the only issue on appeal is whether the twenty-six deeds at issue conveyed to the railroad an estate in fee simple absolute or an easement. If the deeds conveyed only an easement, then the Appellants might have a valid takings claim. *See Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc) ("*Preseault II*"); *see also Chi. Coating*, 892 F.3d at 1170; *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009). But if the railroad "obtained fee simple title to the land over which it was to operate, and that title inures, as it would, to its successors, the [Appellants] would have no right or interest in those parcels and could have no claim related to those parcels for a taking." *Preseault II*, 100 F.3d at 1533; *see also Chi. Coating*, 892 F.3d at 1170; *Ellamae Phillips*, 564 F.3d at 1373. To determine the nature of the conveyance, we apply Oregon law as it is "the law of the state where the property interest[s] arise[]." *Chi. Coating*, 892 F.3d at 1170.

For the reasons below, we agree with the Court of Federal Claims that each of the twenty-six deeds conveyed fee simple title to the railroad and, accordingly, Appellants have no compensable Fifth Amendment takings claim relating to these deeds.

## A

Under Oregon law, "[w]hether an instrument conveys ownership of land or only an easement depends upon the intention of the parties."[2] *Bouche v. Wagner*, 293 P.2d 203,

---

[2]    The parties dispute whether, under Oregon law, it is presumed that the parties intended to convey a fee

208 (Or. 1956) (internal quotation marks omitted); *see also* *Bernards v. Link*, 248 P.2d 341, 344 (Or. 1952).

In *Wason v. Pilz*, a case that did not involve a railroad deed, the Oregon Supreme Court considered a deed conveying a parcel of land for road purposes. 48 P. 701, 701–02 (Or. 1897). The court concluded that because the conveyance granted land only for limited purposes, the language of the conveyance was "indicative of an easement only" and was "controlling as the measure of the estate granted." *Id.*

In *Bernards*, the Oregon Supreme Court held that the railroad deed at issue granted an easement, not a fee simple estate, and stated:

> It will be observed from the deed that (1) it was entitled "Right of Way Deed"; (2) a conveyance of the strip was made "for use as a right of way"; (3) the consideration was only $1 [i.e., the consideration was nominal]; (4) the conveyance was subject to a condition subsequent which revested all title in the grantors in the event the stipulated condition occurred; (5) the grantees were required to construct for the use of the grantors a cattle crossing; (6) the description included the phrase "over and across and out of the land of the grantors"; (7) the phraseology employed repeatedly the term "strip of land"; [and] (8) the grantee was required to "build and keep in repair a good and substantial fence along each side of the strip."

*Bernards*, 248 P.2d at 343–44. Although "[v]arious tests ha[d] been suggested by the commentators for facilitating

---

simple estate unless the intent to pass a lesser estate was expressly stated or necessarily implied. We need not decide this issue to resolve the case, as we conclude that the deeds at issue convey a fee simple estate even if there is no presumption that they did so.

a determination whether a deed like the one before [the court] grants an easement or conveys the fee," the court "deem[ed] it unnecessary to set forth . . . a review of the many authorities cited by the parties" because "the [*Wason*] decision is determinative of the issues under consideration." *Id.* at 343–44. In particular, like the deed in *Wason*, the deed in *Bernards* similarly conveyed land only for a limited purpose: specifically, the deed "convey[ed] . . . *for its use as a right of way for a railroad*, a strip of land." *Id.* at 342 (emphasis added.

The Oregon Supreme Court considered another railroad deed in *Bouche* but this time concluded that the deed conveyed fee simple title. 293 P.2d at 210. As in *Bernards*, the court stressed the importance of what the deed purports to convey. Specifically, the court explained:

> A study of the cited cases suggests that the courts have little difficulty, where a railroad company is the grantee, in declaring that the instrument creates only an easement whenever the grant is a use to be made of the property, usually, but not invariably, described as for use as a right of way in the grant.

> On the other hand, . . . [c]onveyances to railroads, which purport to grant and convey a strip, piece, parcel, or tract of land, and which do not contain additional language relating to the use or purpose to which the land is to be put or in other ways cutting down or limiting, directly or indirectly, the estate conveyed, are usually construed as passing an estate in fee.

*Id.* at 209 (internal quotation marks omitted).

The court further remarked that courts had "express[ed] a divergence of opinion when the conveyance merely has a reference to the use or purpose to which the land is to be put, and which is contained in either the

granting or habendum clause, and, except for the reference, would uniformly be construed as passing title in fee." *Id.* The court explained that the "confusion . . . arises for the most part in the failure to distinguish the twofold meaning of the words 'right of way.'" *Id.* Specifically, the term right of way is "sometimes used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." *Id.* (quoting *Joy v. City of St. Louis*, 138 U.S. 1, 44 (1891) (emphasis omitted)).

In considering the 1921 deed at issue in the case, the court concluded that "it was the intention of the parties that the fee in the land should pass," reasoning:

> The conveyance is not entitled (1) a "right of way deed"; (2) the granting clause conveys land, not a right; (3) the consideration was substantial ($650); (4) there is no reverter provided for; (5) the words "over and across the lands of the grantors" do not appear; and (6) the land conveyed is described with precision.

*Id.* at 206, 209–10. The court explained further that "[t]he only indication that the parties may have intended an easement should pass is the incidental reference to a 'right of way' in the covenant following the granting and habendum clause," but that term "could have referred to either the right of passage or to the land itself," and there was nothing in the deed that limited the use the grantee might make of the land. *Id.* at 209.

The court also concluded that the 1919 deed at issue "conveyed the fee simple title to the land involved," reasoning:

> [The deed] contained no mention of a right of way; it described the subject of the grant as "a strip of land," not as a "right," and there was no statement

of the purposes for which it was granted; it described the land conveyed with a relatively high degree of precision; and the habendum clause is of the type usually employed to convey a fee simple title.

*Id.* at 206–07, 210.

## B

We conclude that each of the twenty-six deeds conveyed fee simple title, not merely an easement, and we thus affirm the decision of the Court of Federal Claims.

Importantly, the granting clauses of all twenty-six deeds at issue purport to convey land—not an easement, not a right of way, and not property for specified purposes. Seventeen of the deeds provide, with at most minor and immaterial grammatical differences: "[The grantors] bargain, sell, grant, convey, and confirm" to the railroad company "and to its successors and assigns forever, *all of* the following described real property . . . to wit: *a strip of land* . . . ." (emphasis added).[3]  Four deeds provide, again with at most minor and immaterial grammatical differences: "[The grantors] grant, bargain and sell, convey[,] and confirm . . . *all that certain lot, piece, parcel and tract of land* . . . ." (emphasis added).[4]  Four more deeds provide, yet again with at most minor immaterial grammatical differences: "[The grantors] bargain, sell, grant, convey[,] and confirm . . . *a strip of land* . . . ." (emphasis added).[5]  And

---

[3]  These deeds are Beals 18/40, Burgholzer 83/99, Cummings, DuBois 24/40, Goodwin, Jeffries, Rinck, Slattery, Smith, Thayer 11/355, Watt 12/343, Watt 12/344, Watt 12/345, Westinghouse 85/39, Wheeler Lumber 16/3, Wheeler Lumber 16/5, and Wilson 75/244.

[4]  These deeds are Friday, Galvani, Hagen, and Stowell.

[5]  These deeds are Gattrell, Rupp, Woodbury 16/481, and Woodbury 23/399.

the remaining deed—Bryden—provides: "[The grantors] grant, bargain, sell and convey . . . *all of* the following bounded and described real property . . . *a strip of land* . . . ." (emphasis added).

Although four of the deeds—Bryden, Friday, Smith, and Stowell—include the word "right of way," the deeds do so only in their descriptions of the property conveyed and only to describe the land itself, not to describe what was being conveyed. *Reconsideration*, 2019 WL 495578, at *51–52, 56–57; *see Bouche*, 293 P.2d at 209 (discussing the "twofold meaning" of right of way).

In addition, although seven deeds—DuBois, Gattrell, Goodwin, Rinck, Slattery, Wheeler Lumber 16/3, and Wheeler Lumber 16/5—further indicate that the right to operate a railroad is conveyed, this language is clearly employed merely to confirm that the conveyance includes that right, not to limit the interest conveyed to that right. *E.g.*, J.A. 50–51, 1310 (providing that "real property" is conveyed to the railroad "and to its successors and assigns forever[,] . . . together with the appurtenances[,] tenements[,] and hereditaments thereunto belonging or in anywise appertaining, together *also* with the right to maintain and operate a railroad thereover" (emphasis added)); J.A. 120–121, 4773 (providing that "real property" is conveyed to the railroad "and to its successors and assigns forever . . . [t]ogether with the appurtenances, tenements[,] and hereditaments thereunto belonging or in anywise appertaining[,] . . . grantors *confirming also* to the grantee, its successors and assigns, the right to build, maintain and operate a line of railway thereover" (emphasis added)).

In addition, none of the deeds provide for a reverter or otherwise contain language limiting the use that the grantee could make of the land. To the contrary, each of the deeds purport to convey land to the grantee and "to its successors and assigns *forever*." And twenty-five of the twenty-six deeds specify that the land is conveyed with all

appurtenances, tenements and hereditaments.  The deeds at issue are thus much more akin to the 1921 deed in *Bouche* than to the deed in *Bernards*.  *Compare Bouche*, 293 P.2d at 209 (concluding that the 1921 deed conveyed a fee simple in part because "there [was] no reverter provided for"), *with Bernards*, 248 P.2d at 342 (deed at issue providing that "should [the grantee] fail so to build such railroad, this grant shall become null and void, and the title to said strip so conveyed shall revert to said grantors and their successors in interest").

In sum, like the granting clause at issue in *Bouche*, the granting clauses in all the deeds at issue here plainly purport to convey real property.  And the deeds state that the property is conveyed to the grantee and its successors and assigns "forever."  The granting clauses do not purport to convey an easement, a right of way, or something else that would indicate an intent to convey an easement, such as property for specific purposes like the deed at issue in *Bernards*.  Nor do the deeds provide for reverter or otherwise limit the uses the grantee can make of the land.  These observations strongly support the conclusion that the deeds transferred fee simple absolute title to the land.  *See Bouche*, 293 P.2d at 209–10; *Bernards*, 248 P.2d at 342–44.

Nothing points us to a different conclusion.  Appellants argue that the deeds' use of the phrase "strip of land" evidences that the deeds conveyed only an easement.  Appellants rely on *Bernards*'s "observation" that the deed at issue, which the court construed as conveying an easement, "employed repeatedly the term 'strip of land.'"  *Bernards*, 248 P.2d at 343.

Appellants' argument is unpersuasive.  For starters, the *Bouche* court stated that "[c]onveyances to railroads, which purport to grant and convey a strip . . . of land" and do not otherwise limit the estate conveyed "are usually construed as passing an estate in fee."  *Bouche*, 293 P.2d at 209.  The *Bouche* court also specifically concluded that

the 1919 deed at issue conveyed fee simple title in part because "it described the subject of the grant as 'a strip of land,' not as a 'right.'" *Id.* at 210. Accordingly, although the deeds describe the land conveyed as a strip, that fact, standing alone, does not evidence that the parties to the deed intended to convey only an easement.

Even assuming Appellants are correct that *Bernards* attached significance to the deeds' use of the term "strip of land," *Bouche* appears to have reduced or eliminated such significance. And it is not at all clear that *Bernards* did attach great significance to the term, considering *Bernards* merely observed that the deed included the term but otherwise rested heavily on *Wason*—which did not relate to the significance of the term strip of land—in reaching its decision. *See Bernards*, 248 P.2d at 343–44. Furthermore, at most *Bernards* attached significance to "repeated[]" use of the term strip of land, but here the deeds use the term infrequently: most use the term only once to describe the land being conveyed, and the deeds that more often use the term do so only because they describe more than one strip of land.

Appellants further point to a number of Oregon Supreme Court cases stating that it is against public policy to have numerous strips of land all held separately in fee simple absolute. *See, e.g.*, *Cross v. Talbot*, 254 P. 827, 828 (Or. 1927). This argument is also unpersuasive. Our decision relies on the relevant Oregon case law, including *Bernards* and *Bouche*. Appellants have failed to persuade us that *Bernards* and *Bouche* are not good law or otherwise do not already account for this public policy, particularly considering that the Oregon Supreme Court announced this public policy long before *Bernards* and *Bouche*. Furthermore, we note that it is beyond question that, under Oregon law, railroads sometimes obtained fee simple title to strips of land used for their rail lines. *See, e.g.*, *Bouche*, 293 P.2d 203. This is such a case.

In addition, Appellants contend that the deeds do not describe the land with precision, which favors finding that the deeds convey an easement.  This argument falls short because each of the deeds describes the land conveyed with at least some precision.  In particular, each deed identifies the boundaries of the strip of land conveyed in reference to the centerline of the railroad that had been surveyed and located before executing the deeds.  Under such circumstances, it can hardly be said that the deeds failed to adequately specify the boundaries of the land conveyed.  *See, e.g.*, Restatement (First) of Property § 471 (1944) (observing that "a conveyance creating an estate" can describe the land conveyed "in any of many different ways," including "by reference to an area to be located by survey with reference to a known point or points").

Appellants also highlight that many of the deeds use the term "through" or "across," which they contend is similar to the *Bernards* deed's usage of "over and across and out of the land of the grantors." *Bernards*, 248 P.2d at 342–43. We are not convinced.  The deed in *Bernards* used that phrase in the granting clause to describe what was conveyed, and the usage suggested that the deed conveyed not a possessory interest in the property itself but rather a nonpossessory right of way over and across the land.  *See id.*  In contrast, here the deeds do not use "through" and "across" to limit what was conveyed by the deed.  Rather, the deeds use the terms only in the description of the property conveyed and merely to communicate that the railroad had been located through certain property.

Furthermore, Appellants argue that, for many of the deeds, the stated consideration was nominal, which Appellants contend evidences that the parties intended to convey only an easement.  Under these circumstances, reciting nominal consideration is insufficient to overcome the other factors supporting a determination that the deeds convey an estate in fee simple absolute.  We also note that, on at least one occasion, an Oregon appellate court gave little

weight to a pre-1967 deed's recitation of nominal consideration of $1 on the basis that "[i]t was not until 1967 that the legislature" began "requiring that conveyances state true and actual consideration," and there was "no evidence that one dollar was the true consideration." *Realvest Corp. v. Lane Cnty.*, 100 P.3d 1109, 1118 & n.6 (Or. Ct. App. 2004). Likewise, the deeds at issue here were all executed prior to 1967, and there is no evidence that the recited consideration is the true consideration.

Finally, Appellants contend that we should construe the deeds as passing an easement because each deed specifically states that the railroad had already surveyed and located a railway across the grantor's land prior to executing the deed. Appellants rely on our decision in *Preseault II*. There, we interpreted Vermont law as providing that where a railroad company's survey and location of the railway precedes the execution of a written instrument, the survey and location, not the subsequent written instrument, "is the operative determinant." *Preseault II*, 100 F.3d at 1536–37. We explained that railroads in Vermont had eminent domain power to acquire easements in land necessary to operate rail lines. *Id.* We reasoned that where a railroad company surveys and locates its right of way prior to any written agreement, such action evidences the company's intent to acquire only an easement pursuant to its eminent domain authority, and any subsequent written conveyance "retain[s] [that] eminent domain flavor." *Id.*

Appellants' reliance on *Preseault II* is unpersuasive. *Preseault II* applied Vermont law, not Oregon law, and we are unaware of any authority in Oregon that supports Appellants' position. To the contrary, the 1921 deed construed in *Bouche* plainly indicated that it was executed after the railroad was "located and established," and the *Bouche* court gave no significance whatsoever to that. *Bouche*, 206 Or. at 206, 209. We do not accept Appellants' invitation to depart from *Bouche*.

Furthermore, even the Supreme Court of Vermont has not interpreted *Preseault II* to support Appellants' position. In *Old Railroad Bed, LLV v. Marcus*, the Supreme Court of Vermont explained that "[t]o the extent that . . . *Preseault* [*II*] holds that a location survey automatically converts a subsequent fee-simple conveyance into an easement, we know of no law in Vermont or elsewhere to support such a claim." 196 Vt. 74, 79 (2014). Indeed, a location survey does not "preclude[] a railroad from subsequently purchasing, or the landowner from subsequently conveying, a deeded fee-simple interest." *Id.* at 81. For at least these reasons, we do not read *Preseault II* as broadly as Appellants, and even if we did, *Preseault II* would nevertheless not justify departing from *Bouche* and *Bernards*.

In short, we conclude that the twenty-six deeds at issue here each conveyed an estate in fee simple absolute, not an easement, to the railroad company. Importantly, each of the deeds purports to convey land, not an easement, right of way, or property for specified purposes. In addition, the deeds purport to convey the land forever and do not provide for reverter or otherwise restrict the use the grantee could make of the land. Even though some of the deeds recite only nominal consideration and the deeds were executed after the railroad was surveyed and located, on balance and under these circumstances, we conclude that the parties conveyed estates in fee simple absolute to the railroad company.[6]

---

[6]    We further note that even if we were to conclude, for one or more deeds, that there was irreconcilably conflicting language between the granting clause and other parts of the deed, the granting clause—which purports to convey land, not a right of way or property for specified purposes—would control. *Palmateer v. Reid*, 254 P. 359, 361 (Or. 1927); *see also First Nat'l Bank of Or. v. Townsend*, 555 P.2d 477, 478 (Or. Ct. App. 1976) ("There is also

### III

We have considered Appellants' remaining arguments but find them unpersuasive.  For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

**AFFIRMED**

---

authority for the more technical proposition that if the intent of the parties cannot be discerned from the deed and there is, as here, an irreconcilable conflict between the granting clause and other parts of the deed, the estate conveyed in the granting clause will prevail.").